THE STATE ex inf. MYTTON, Prosecuting Attorney, v. BORDEN et al., Appellants.

*164 221*
*164 459*

In Banc, June 29, 1901.

1. **Special Legislation: CITIES: NEW CLASS: 100,000 TO 150,000 INHABITANTS.** A statute creating a board of public works "in cities of 100,000 and less than 150,000 inhabitants," being applicable to only one city in the State, is, under, the guise of a general law, a special law in fact provided for that particular city, and is, therefore, in disregard of the inhibition of the Constitution as to special laws for particular cities, and also of the principle of uniformity in the laws of cities of the same class which it was the purpose of the Constitution to create, the power of the Legislature being limited to the creation of four classes.

2. **Laws: TITLE: NOT INDICATIVE OF ACT.** An act is unconstitutional which unites in the body thereof two separate and independent subjects, one of which is not expressed in the title thereof.

Appeal from Buchanan Circuit Court.—*Hon. A. M. Woodson,* Judge.

AFFIRMED.

*Kendall B. Randolph* for appellants.

(1) The answer and return of the appellants state that the city of St. Joseph is a city of more than 100,000 inhabitants and less than 150,000 inhabitants, and the court will take judicial notice of the population of the city; and the return also states that the city of St. Joseph is a city of the second class. The demurrer, of course, admits the truth of all of the allegations of the answer and return. (2) The act above recited does not confer any new powers upon the cities for which it was enacted, neither does it put any restriction upon the city as to its powers. The whole act simply provides . a method of procedure for the exercise of the powers already by previous laws granted to the city. The only prohibition in section 7 of article 9 of the Constitution is, that "the number of such classes shall not exceed four and the power of each class shall be defined by general laws." We understand the Constitution to mean that the powers shall be defined by general laws, "so that all such municipal corporations of the same class shall possess the same powers and be subject to the same restrictions." We do not understand that the Constitution in any manner seeks to control legislation as to the procedure to be followed by the city in the exercise of the powers which are provided by general law. Murnane v. St. Louis, 123 Mo. 479; Owen v. Baer, 154 Mo. 434; Kansas City ex rel. v. Scarritt, 127 Mo. 642. It is plain that the general law, classifying cities and defining the powers and restrictions, is not a part of the Constitution and is subject to repeal and modification, the same as any other laws, the Constitution itself not providing the classification of cities. The classification can be made by any name and may be based upon the population, and when any general law is passed it can not be held to be unconstitutional because it conflicts with prior

laws passed by the General Assembly. The conflict must be with the Constitution. Whatever effect it has on such prior laws must be either to repeal, modify or enlarge. If it has any other effect, it must be by reason of the Constitution so acting on the prior laws as to take away from the Legislature its power to reform or change them. The law in question is a general law; it provides certain procedure for cities of not less than 100,000 inhabitants nor more than 150,000 inhabitants. That this is a general law is clearly shown by the reasoning in Murnane v. St. Louis, supra.

*W. K. Amick* and *James Moran* also for appellants.

(1) Whenever a law operates uniformly in all parts of the State and affects all persons and localities in the same manner under similar conditions, it is a general and not a special law. State ex rel. v. Yancy, 123 Mo. 391; State ex rel. v. Bishop, 128 Mo. 373; State ex rel. v. Ins. Co., 150 Mo. 113. Statutes relating to persons or things as a class are general laws; and statutes relating to particular persons or things of a class are special laws. State v. Walsh, 136 Mo. 400; Dunne v. Kansas City, 131 Mo. 1; State v. Gritzner, 134 Mo. 512. Legislation which is authorized by the Constitution itself, can not be regarded as local or special legislation within the meaning of the Constitution. Spaulding v. Brady, 128 Mo. 653. The Act of 1877, providing for the election of justices of the peace in St. Louis, was held not invalid as being local legislation. State ex rel. v. Walton, 69 Mo. 556. The Act of 1883, providing for the registration of voters and the government of elections in certain cities, held not local or special law. Ewing v. Hoblitzelle, 85 Mo. 64. The Act of 1891, providing for a division of cities having a certain population into election districts for the election of justices of the peace, was held not invalid as

special or local legislation, although it was intended to apply to the city of St. Louis only. State ex rel. v. Higgins, 125 Mo. 364; Spaulding v. Brady, 128 Mo. 653. The Act of 1881, relating to sewers and drains in cities containing a specified population, held valid and not local or special legislation. Rutherford v. Heddins, 82 Mo. 388; Rutherford v. Hamilton, 97 Mo. 543. An act of the Legislature must appear to be unconstitutional beyond a reasonable doubt before the judiciary will pronounce it invalid for that reason. Ewing v. Hoblitzelle, 85 Mo. 64. A statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is a special law. State v. Tolle, 71 Mo. 650; State ex rel. v. Walton, 69 Mo. 558; Ewing v. Hoblitzelle, 85 Mo. 64. (2) The fundamental rule is, that legislators, as well as judges, are bound to obey and support the Constitution, and it is to be understood that they have weighed the constitutional validity of every act they pass. Hence, the presumption is always in favor of the constitutionality of a statute; every reasonable doubt must be resolved in favor of the statute, not against it; and the courts will not adjudge it invalid unless its violation of the Constitution is clear, complete and unmistakable. Cooley on Const. Lim. (6 Ed.), 217; Block's Constitutional Law, sec. 30, p. 59; Tonnage Tax Cases, 62 Pa. St. 286; Kerrigan v. Force, 68 N. Y. 381; Stewart v. Supervisors, 30 Ia. 9; Ewing v. Hoblitzelle, 85 Mo. 64; State ex rel. v. Yancy, 128 Mo. 391; Lynch v. Murphy, 119 Mo. 163; State v. Addington, 77 Mo. 110; State v. Railroad, 48 Mo. 470. (3) Whether an act of the Legislature be a local or general law must be determined by the generality with which it affects the people as a whole, rather than the extent of the territory over which it operates, and if it affects equally all persons who come within its range, it can neither be special nor local within the meaning of the

Constitution.    State ex rel. v. Yancy, 123 Mo. 401; State ex
rel. v. Bishop, 128 Mo. 373; State ex rel. v. Ins. Co., 150 Mo.
113; Ewing v. Hoblitzelle, supra; State ex rel. v. Dolan, 93
Mo. 467.    (4)    All that the Constitution requires is that the
subjects embraced in the act shall be fairly and naturally ger-
mane to that recited in the title.    State v. Bennett, 102 Mo.
356; State ex rel. v. Bronson, 115 Mo. 271; State v. Black-
stone, 115 Mo. 424; State v. Bockstruck, 136 Mo. 335.    The
provisions of this section of the Constitution are to be liberally
construed.    State ex rel. v. Ranson, 73 Mo. 78; State ex rel. v.
Finn, 8 Mo. App. 341.    And where all the provisions of a stat-
ute fairly relate to the same subject, and have a natural connec-
tion with it, the subject is single, and if sufficiently expressed in
the title, the statute is valid.    State v. Morgan, 112 Mo. 202;
Lynch v. Murphy, 119 Mo. 163.    The title to the act in ques-
tion could not in any manner deceive any one—to make such a
charge is, in effect hypercritical and fantastic criticism.    (5)
The act under review is general, applying to all cities having
100,000 and less than 150,000, and to cities of the second class;
and is presumed to have been passed with deliberation, and with
a knowledge of all existing laws on the same subject (Brown v.
Lease, 5 Hill, 226; Landis v. Landis, 39 N. J. L. 277), and if
the act makes any change in the existing law, a repeal to that
extent is suggested, and the extent of the repeal must be ascer-
tained and defined by the court.    Moore v. Mausert, 49 N. Y.
332.    Such repeals are recognized as intended by the Legisla-
ture, and its intention to repeal is ascertained as the legislative
intent is ascertained in other respects.    Thorpe v. Schooling,
7 Nev. 15.    Sutherland on St. Con., sec. 138.    An implied
repeal results from the terms and necessary operation of all that
can not be harmonized with the terms and necessary effect of the
earlier law.    The last expression of the Legislature must pre-

Vol 164 mo—15

vail; and the repugnancy being ascertained, the last act in date or position has full force and displaces by repeal whatever in the precedent law is inconsistent with it.   Wood v. U. S., 16 Pet. 342; Railroad v. Boston, 102 Mass. 389; Mayor, etc. v. Railroad, 20 N. J. Eq. 360; Fowler v. Perkins, 77 Ill. 271; Supervisors v. Railroad, 93 U. S. 619; U. S. v. Sixty-seven Packages, 17 How. 85; Ex parte Crow Dog, 109 U. S. 556; Lyddy v. Long Island City, 104 N. Y. 218; Sutherland on Stat. Const., sec. 138.

*H. M. Ramey* and *Stauber, Crandall & Strop* for respondent.

(1) The act purports by its title, and by all its sections, except 5, 12 and 13, to be an act creating a board of public works in cities containing a population of 100,000 and under 150,000, and can not be held to apply to any city of the second class in this State.   City of Kansas v. Payne, 71 Mo. 159; State ex rel. v. Hedge, 135 Mo. 112.   (2) If the act can be held to apply to any city of the second class that has a population of 100,000 inhabitants or over, then it is in violation of section 28 of article 4 of the Constitution, for two reasons: (a) The bill contains two subjects. (b) The title of the bill does not indicate the subject dealt with by the act itself.   Witzman v. Railroad, 131 Mo. 612.   (3) Said act is also in conflict with the provisions of section 7, article 9, of the Constitution, for two reasons:   (a) Because an attempt is made by this act to create a fifth class of cities, to-wit, cities of 100,000 and less than 150,000.   (b) Because under this act all cities of the same class are not governed by the same laws and are not subject to the same restrictions.   Murnane v. St. Louis, 123 Mo. 479; Kansas City ex rel. v. North Park District, 127 Mo. 642; St. Louis v. Dorr, 145 Mo. 466; Owen v. Baer, 154 Mo. 434.

(4) The act under consideration, if applied to the city of St. Joseph, is a local or special law and violative of section 53, article 4, of the Constitution. Murnane v. St. Louis, 123 Mo. 494; Electric Light Co. v. City of Lamar, 128 Mo. 210.

BRACE, J.—This is a suit in the nature of a quo warranto by the prosecuting attorney of Buchanan county, to oust the defendants from the office of board of public works of the city of St. Joseph, in which a demurrer to their return to the writ was sustained by the circuit court, and from the judgment thereon this appeal is prosecuted. The defendants claim right to the office by virtue of an election held in pursuance of an act of the General Assembly, "approved March 14, 1901," which is as follows:

"An act creating a board of public works in cities of 100,000 and less than 150,000 inhabitants, prescribing its powers and duties, and repealing all acts or parts of acts inconsistent therewith, with an emergency clause.

"Be it enacted by the General Assembly of the State of Missouri, as follows:

"Section 1. There is hereby established in every city in this State now or hereafter containing 100,000, and less than 150,000, inhabitants, a board of public works, to consist of three members, who shall be elected, and the city engineer who shall be ex officio a member thereof, but shall not vote in any manner coming before said board, which said board shall be known and designated as the board of public works of the city of —————.

"Sec. 2. At the city election held in 1901 there shall be elected three members of said board to serve for one year. At the city election to be held in 1902, three members of said board shall be elected for four years, and three members of said board shall be elected every four years thereafter, to hold

for a term of four years. No elective member of such board shall hold any other municipal office, or any state, county or federal office during his membership on said board. Any of said members may be removed for cause as other city officers may be removed, and vacancies in said board shall be filled as vacancies in other city offices are filled. Said elective members shall receive a salary of six hundred dollars per annum, to be paid monthly by the city in which said board is created, but the city engineer shall receive no compensation for his services as a member of said board.

"Sec. 3. There shall be a president of said board to be elected by the members thereof, who shall preside at all meetings of the board and perform such duties as appertain to such position.

"Sec. 4. Such board of public works shall be provided with an office by the city and shall meet at such office at least once each week for the transaction of business. Two members of said board shall constitute a quorum. In case of the absence, inability or refusal of the president to act at any meeting of said board, the members present may elect a temporary president who shall, for the time being, possess all of the powers of president of said board. Said board shall keep in its office a full and complete record of all its proceedings and such records shall be at all times open to the inspection of the public.

"Sec. 5. From and after the passage and approval of this act such board of public works shall appoint the city engineer and street commissioner in all cities of the second class, who shall hold their office under such appointment during the pleasure of the board, and said board shall also appoint or employ such assistants, inspectors and other employees as may be necessary. Said city engineer shall, under the direction of said board, superintend the construction of all public works, make

plans, specifications and estimates thereof, do all surveying and engineering ordered by the city and perform such other duties as may be prescribed by said board or by ordinance.    Said board shall fix the compensation of said engineer, but such compensation shall not exceed two hundred dollars per month. Said board shall appoint a chief clerk and such assistant clerks as may be necessary, who shall perform such duties as may be prescribed by the board.    The compensation of such chief clerk shall be such as may be fixed by said board, provided such compensation shall not exceed the sum of one hundred and twenty-five dollars per month.    The compensation of the street commissioner shall be $80 per month, and the compensation of the other employees herein authorized shall be fixed by said board from time to time.    The salaries and compensation of such officers and employees shall be paid by the city as other employees of such cities are paid.

"Sec. 6.    Said board shall supervise the grading and paving of all streets, avenues, alleys and public grounds; the cleaning, sprinkling, repairing, flushing, washing and improving of all streets, avenues, alleys and public places, except public parks; the construction, altering and repairing of all bridges, culverts, inlets, manholes, sewers, drains and watercourses within said city, and the flushing thereof when necessary; the laying of all gas, steam and water pipes and all conduits, together with all service connections and appurtenances thereto belonging; the issuing of permits for connecting with any gas, water, steam or sewer pipes or conduits; the laying and repairing of all sidewalks, crosswalks, curbing and guttering; the construction of all vaults, under and areaways in any portion of said streets and sidewalks; the location and regulation of all telegraph, telephone, fire alarm and messenger poles, wires and conduits; the construction and repairing of all city buildings, engine houses, waterworks, gas and light plants, and all

other public buildings of said cities except public libraries, and hereafter no permit for entering upon, disturbing or occupying for any purpose whatever the streets, alleys or public grounds of any such city shall be issued except by the board of public works hereby created.

"Sec. 7.   Said board shall have charge [of] and purchase all supplies and materials needed for the city in its several departments under such rules and regulations as may be prescribed by said board.

"Sec. 8.   From and after the passage and approval of this act all petitions for the paving, grading or repaving, regrading or reconstructing any street, alley, avenue or public way of the character contemplated in section 6 hereof shall be addressed and presented to said board of public works and said board shall speedily hear and determine all such applications or petitions. The board of its own motion may and upon presentation of a petition signed by the majority required by law shall prepare an ordinance for the improvements therein contemplated and submit such ordinance, together with a copy of the petition for such improvements, if there be a petition, to the municipal assembly and also to transmit to the municipal assembly with the proposed ordinance for any improvements the full plans and estimates of the cost of the improvements contemplated.   If the municipal assembly shall pass such ordinance and the same shall be approved by the mayor, it shall then be the duty of the board of public works, whether the improvement is to be paid for by the city or by the issuing of special taxbills to advertise for proposals for doing the work according to the plans and specifications which shall be kept on file in the office of said board, and be open at all times to public inspection.   Advertisements for doing of such work shall state the character and extent of the improvements contemplated and shall be published in the paper doing the city printing for not less than five days

nor more than ten days. All proposals for the doing of such work shall be sealed, directed to said board and accompanied by a certified check payable to the treasurer of said city, in such sum as may be named by said board in the advertisement for bids and conditioned that in case the contract for the improvement for which the bid is made shall be awarded to such person and such bidder fails to enter into the contract for doing said work within the time fixed, then the sum named in said check shall be forfeited to said city. All proposals shall be opened at the time and place mentioned in the advertisement.

"Sec. 9. All contracts relating to any of the improvements herein contemplated shall be made by said board shall be awarded to the lowest and best bidder, but such board shall have at all times the power to reject any and all bids. Copies of all contracts entered into by the board of public works shall be filed with the comptroller. No contract shall be entered into until the contractor shall have entered into a bond, payable to such city, with one or more good and sufficient sureties to be approved by comptroller, and the form of said contract shall be approved by the city counsellor conditioned that such contractor shall faithfully perform the work called for and complete the same in all respects according to the plans and specifications therefor, and that such contractor shall pay for all labor and all material purchased and used in the making of said improvements. In letting the contracts the board shall reserve the right to decide all questions as to the proper performance of the work and the meaning of contracts, and in case of improper construction may suspend the work and relet the same or order the entire reconstruction of such work, or may relet to another contractor, as may be deemed best by the board. In case of the suspension of any public work the board may, when the urgency of the case and the interests of the city require it, employ workmen to perform or complete any improvements ordered by or-

dinance, provided that the costs and expenses thereof shall in no case exceed the amount appropriated to do such work.

"Sec. 10.　The board of public works shall provide for the issue of all special taxbills against property-owners, chargeable with special taxbills for work performed, which said taxbills shall be authenticated and certified to by the city engineer. When surveys and estimates are required to be made by the city engineer, they shall be made and turned over to the board of public works.　The city assessor shall also make his return of the assessed valuation of property to pay for the grading of any street, avenue, alley or other highway to said board.

"Sec. 11.　The manner of paying for all public improvements shall be the same as is now provided by law for cities of the second class, provided that all special taxbills issued under the provisions of this law, shall show on their face the total amount of the work done, the total cost thereof, and the amount charged against each tract or parcel of real property.

"Sec. 12.　All special taxbills for work contemplated by this act and the laws governing cities of the second class shall be made out by the city engineer employed by said board, and shall be certified by him, and by him duly registered in the office of said board of public works in full, and said special taxbills shall then be signed by the president of the board of public works, or by such clerk as the said board by resolution may authorize to do so, and delivered to the party in whose favor they are issued for collection and his receipt taken in full of all claims against the city on account of such work.　Except as otherwise provided in this act such special taxbills in all things shall be subject to the general laws governing cities of the second class.

"Sec. 13.　The municipal assembly in cities of the second class shall have no power to pass any ordinance authorizing or providing for nor to approve any contract for the grading, re-

grading, paving, repaving or constructing of any street, avenue, alley or public ground; the cleaning, sprinkling, repairing, flushing, washing or improving of any street, avenue, alley or public place, except public parks; the construction, altering or repairing of any bridge, culvert, inlet, manhole, sewer, drain or watercourse; the laying of any gas, steam or water pipes, or any conduit, or any connection or appurtenance thereto; the laying or repairing of any sidewalk, cross-walk, curbing or guttering; the construction of any vault under or areaway in any street or sidewalk; the location or regulation of any telegraph, telephone, fire alarm or messenger poles or the wires, conduits or appliances used in connection therewith; the construction or repairing of any city building, engine house, waterworks, gas or light plant, or any other city building, except libraries, unless the ordinance authorizing the same shall have been first recommended by said board of public works.

"Sec. 14.   No plat of land as an addition to said city or for the subdivision of any lot, block or other subdivision of land of which plats have never been filed, shall be filed for record unless such plat shall have been submitted to said board of public works and the approval of such board is indorsed thereon before the same shall be presented for approval to the municipal assembly.

"Sec. 15.   All moneys appropriated by the municipal assembly for repairs and improvements or for street cleaning purposes shall be expended under the direction and subject to the approval of the board of public works, and such board shall appoint some suitable person who shall have charge of the street cleaning department in such city, who shall receive such compensation as may be fixed by said board, not exceeding eighty dollars per month, and who shall hold such position during the pleasure of said board and such board shall employ such labor as may be necessary in the street-cleaning department, provided

the expense for this purpose in any one month shall not exceed the appropriation made therefor.

"Sec. 16. The board of public works shall, on the third Monday in April of each year, submit to the municipal assembly through the comptroller, a report and statement in detail, showing the work of the previous year, on what account and how paid for, and shall also render a statement showing the estimated cost of improvements and repairs necessary to be undertaken during the current year, and the sum required therefor.

"Sec. 17. The fact that the election of city officers in cities of the second class will be held in April, 1901 and that there is now no law authorizing the election of the members of the board of public works herein provided, creates an emergency within the meaning of the Constitution; therefore, this act shall take effect and be in force from and after its passage.

"Approved March 14, 1901."

The facts alleged in the return upon which defendants claim the right to exercise the functions of the board of public works of the city of St. Joseph, and which are admitted by the demurrer, are, that the city of St. Joseph is a city containing more than 100,000, and less than 150,000 inhabitants; "is a city duly organized as a city of the second class under the laws of the State of Missouri;" that the defendants were elected members of said board at a regular election duly held in said city on the second day of April, 1901; were duly commissioned, qualified and entered upon the discharge of their duties as such; appointed Charles W. Campbell city engineer, who also duly qualified as such, and thereupon they with the said Campbell entered upon the discharge of the duties of said board. Wherefore, defendants deny that they have usurped said office, etc. The response to this claim is, that the said act of the Legislature is unconstitutional and void, and, therefore the circuit court properly sustained the demurrer.

(1)  By section 7 of article 9 of the Constitution it is provided that "the General Assembly shall provide, by general laws, for the organization and classification of cities and towns. The number of such classes shall not exceed four; and the power of each class shall be defined by the general laws, so that all such municipal corporations of the same class shall possess the same powers and be subject to the same restrictions" * * *.

By section 53 of article 4, the General Assembly is prohibited from passing (among others) "any special law" changing the charter of cities, or a local special law where a general law can be made applicable.  And by section 28, article 4, it is provided that "no bill  * * *  shall contain more than one subject, which shall be clearly expressed in its title."

In pursuance of the mandate contained in the first constitutional provision cited, the General Assembly has provided by general laws for the organization of the cities and towns of the State into four classes, and has defined the powers of each class so that all municipal corporations of the same class possess the same powers and are subject to the same restrictions.   [R. S. 1899, chap. 91.]   This general law provides that "all cities and towns in this State containing one hundred thousand inhabitants or more shall be cities of the first class," and "all cities and towns in this State containing thirty thousand and less than one hundred thousand inhabitants shall be cities of the second class," and so on down the scale of population until the four classes contemplated by the Constitution are provided for (R. S. 1899, sec. 5252, et seq.), and also provides a method by which a city of the lower, may, upon attaining the requisite population, be incorporated as a city of the higher class.   [R. S. 1899, secs. 5257 and 5262.]

That the act in question was intended to apply to the city of St. Joseph is beyond dispute.   There is no other city in

the state to which it could apply. By it, under the guise of a general law, a special law is in fact provided for that city in disregard of the inhibitions of the Constitution as to special laws for particular cities, and of the principle of uniformity in the laws of cities of the same class which it was the purpose of the Constitution to have, and which by the general law aforesaid has been established in the State. The guise under which this result is sought to be accomplished, while it may give to the law the appearance of a general law, does not conceal its real character, and by creating an additional class of cities to which it is applicable, renders it obnoxious to the provisions of the Constitution, which limits the power of the Legislature to the creation of four classes. By such legislation as this, if upheld, the constitutional provisions in this regard would be rendered nugatory, and special and variant laws might be enacted for the government of most of the cities of the State. All that would be necessary for the accomplishment of that end, would be to select a maximum and minimum number within which is comprised the population of the city for which a special law is desired, thereby create a class, regardless of the class to which it really belongs, and make the law applicable to such newly-created class. And thus we might have almost as many classes as there are cities in the State, all governed by different and variant laws, instead of only four classes governed by laws uniform for each class, as contemplated by the Constitution. But this law is not only vicious in this respect, it has another fatal defect.

(2) It palpably violates the last constitutional provision cited, which requires that "no bill shall contain more than one subject, which shall be clearly expressed in the title." The subject as expressed in the title is, "An Act creating a board of public works in cities of 100,000 and less than 150,000 inhabitants, prescribing its powers and duties, and repealing all

acts or parts of acts inconsistent therewith, with an emergency clause." Now, while in the main the act is devoted to legislation for cities of the class mentioned, if class it can be called, yet we find injected into the body of the act three sections, to-wit, sections 5, 12 and 13, governing cities of the second class, materially affecting their interests and changing the general law under which they are incorporated, and section 17, predicating an emergency upon the fact of the near approach of the election of city officers for that class, although cities of that class are not mentioned or even hinted at in the title of the act, and no one could have inferred therefrom that they were included in its legislation; thus uniting in the same act two separate and independent subjects, one of which is not expressed in the title thereof and bringing it clearly within this inhibition of the Constitution. The act contains no repealing clause, and is otherwise incongruous and absurd, but as it is so obviously obnoxious to the constitutional provisions cited, further comment is unnecessary.

The circuit court committed no error in sustaining the demurrer to the return, and its judgment thereon is affirmed.

All concur; *Sherwood, J.*, in the result.