## THE STATE v. JOHN SLOAN, Appellant.

Division Two, May 26, 1914.

1. **CONSTITUTIONAL STATUTE: Title: Inclusion of One Class: Exclusion of Others.** The title to an act may be general in its terms and omit reference to or an expression of matters germane to the substantive purposes of the act, and if its general terms are broad enough to embrace those purposes, it will not be violative of the constitutional requirement that

258 Mo.—20

the subject of an act must be clearly expressed in its title. But if the title extends itself into particulars and specifies a certain class of persons or things as included within the provisions of the act, the body of the act, in so far as it includes others not so included and specified in the title, is invalid.

2. ————: ————: ————: **Herding Cattle by Non-residents: Does Not Include Residents.** The title to an act which is "Herding Cattle By Non-residents" is not broad enough to indicate that the body of the act includes a section making criminal the herding of cattle by residents, but as definitely as words can convey their meaning limits the application of the act to non-residents. Therefore Sec. 794, R. S. 1909 (and in consequence the amendment thereto in 1911, Laws 1911, p. 59), declaring that "it shall be unlawful for any person" to take or drive from one county to another, any neat or horned cattle, mules, horses or sheep, for the purpose of herding or grazing them upon any of the unimproved or uninclosed lands of this State, is, in so far as it includes residents, invalid, since the title of the act when first enacted in 1874 was, "An Act to prevent non-residents from herding or grazing their cattle on certain lands in this State," and thereafter the act was carried forward in the Revised Statutes with the title, "Herding Cattle by Non-residents," and with that title was amended in 1889 by making it apply to residents as well as non-residents, and all attempts at amendment since then used the same title.

Appeal from Shannon Circuit Court—*Hon. W. N. Evans*, Judge.

REVERSED.

*John H. Chitwood* and *David M. Tesreau* for appellant.

(1) The title to the act of which Sec. 794, R. S. 1909, is a part, deals definitely and exclusively with one class of individuals only, termed non-residents of the State, which constitutes one subject. Laws 1903, p. 57. Said section 794 goes further and embraces another and different class of individuals, to-wit, residents of this State. Sec. 794, R. S. 1909. We submit whether the said act of 1903 has any title at all; by said act the original title was repealed, and none sub-

State v. Sloan.

stituted in lieu of it. Sec. 1, Laws 1903, p. 58. Had the title to said act been general, for instance "Herding and Grazing Cattle," it might have been sufficiently broad to have embraced all persons engaging in that business, whether residents or non-residents. But the title, if indeed there is any title, descended into details and nominated a certain class to which said section 794 is to apply, consequently it cannot affect or include a class or subject not designated in the title. State v. Rawlings, 232 Mo. 557. Does the title to the act of which said section 794 is a part, indicate the general contents of the bill and contain but one general subject, in compliance with the constitutional provision? We contend that it does not. Constitution, sec. 28, art. 4; State v. Fulks, 207 Mo. 34. The constitutional question was raised by appellant in his instructions after the testimony disclosed the fact that appellant was a resident of this State; the earliest moment at which he could raise the question, and he followed it up in his motion for new trial, and in his motion in arrest of judgment. State v. Gamma, 215 Mo. 104.

*John T. Barker*, Attorney-General, and *S. P. Howell* for the State.

(1) The presumption obtains that a legislative act is valid and the burden is cast upon appellant to show beyond doubt that it is violative of some constitutional provision. It is not enough that there be a mere possibility that the act is unconstitutional, but the appellant must go further and show clearly that it infringes upon some constitutional provision. Ex parte Loving, 178 Mo. 203; State v. Cantrell, 179 Mo. 261; State ex rel. v. Aloe, 152 Mo. 477; State v. Thompson, 144 Mo. 322; Phillips v. Railroad, 86 Mo. 471; State v. Price, 229 Mo. 678. (2) Where there is doubt as to the constitutionality of an act it will be resolved in favor of the validity of the act. State v. Cantrell,

179 Mo. 280;.Ex parte Loving, 178. Mo. 221; State v. Hamey, 168 Mo. 197; State v. Able, 65 Mo. 362; County v. Griswold, 58 Mo. 192; State ex rel. v. McIntosh, 205 Mo. 602; State v. Addington, 77 Mo. 117. (3) The expediency or inexpediency of an act is a question for the Legislature and not for the courts. In passing upon the constitutionality of a legislative act this court will not inquire into the motives or necessities that prompted its passage. State ex rel. v. Stratton, 134 Mo. 429; Brown v. Cape Girardeau, 90 Mo. 383; Hannibal v. Marion Co., 69 Mo. 576; State v. Swaggerty, 203 Mo. 527; State ex rel. v. Vandiver, 222 Mo. 217. Where the provisions of the act fairly relate to each other and are reasonably germane to the subject expressed in the title, that is sufficient. From reading the subject-matter of article 6 as it appears in the Revised Statutes of 1909, the title to which is correctly stated in the 1911 amendment, it is obvious that the purpose in the minds of the legislators in enacting this legislation was to prevent unauthorized grazing upon the unenclosed and unimproved lands within the State. The prevention of such unauthorized herding is the subject of the act. They recognized the evil and formulated a plan to correct it. The question as to the situation or character of the persons in whom ownership of the cattle rested was purely incidental to the primary purpose to be accomplished. Clearly the wrong perpetrated and the damage to the land, of the character indicated, would be equally as great whether the animals were owned by residents or non-residents of the State. The primary purpose and real object in view was to protect the fruit of the land from appropriation by persons without authority; and it would seem, therefore, that all classes of persons by whom this wrongful act might be committed would properly fall within the purview of that purpose. That being true, it would logically follow that all provisions of the act relating to the means used to make effective.

this purpose would be germane to the object expressed
in the title.  If germane to the object so expressed in
the title that fully meets the constitutional requirement
of the section and article on which the appellant bases
his attack.  In a long line of cases this court has held
that all auxiliary provisions necessary for accomplish-
ing the purpose of the act as indicated by the title
may properly be embraced within the enactment.  State
v. Miller, 45 Mo. 498; Ewing v. Hoblitzelle, 85 Mo. 71;
Lynch v. Murphy, 119 Mo. 167; State ex rel. v. Miller,
100 Mo. 444; State ex rel. v. Heege, 135 Mo. 112; State
v. Bixman, 162 Mo. 19; State v. Doerring, 194 Mo. 408;
State v. Brodnax, 228 Mo. 53; State v. Price, 229 Mo.
678; State v. Miner, 233 Mo. 334; Burge v. Railroad,
244 Mo. 86; Bishop on Stat. Crimes (3 Ed.), sec. 36a;
1 Lewis's Sutherland, Stat. Const., p. 249.  The title
to the article as it appears in the 1909 revision of the
statutes is, ''Herding by Non-residents,'' and the ap-
pellant interprets that to mean non-residents of the
State.  There is perhaps no principle of interpretation
more firmly imbedded in the decisions of this State
than that the courts in passing upon the sufficiency of
a title to a legislative enactment will give to the words
used therein a broad and liberal rather than a narrow
and restrictive construction; and corollary to that
principle is the rule that a title will be held sufficient if
that result can be obtained without doing actual vio-
lence to the meaning of the words used therein.  By
construing the word non-resident to refer to a non-
resident of a particular county or place within the
State, is but giving to the term a broad and compre-
hensive interpretation.  It is clear that the term when
so construed necessarily includes non-residents of the
State, and also all non-residents of a particular county,
whether they reside in other counties or states.  In
view of the evil sought to be remedied, namely, the
unauthorized grazing upon certain lands, it would
seem reasonable to infer that the Legislature was fully

cognizant that the act was intended to include all classes of offenders. It is unfair to assume that the lawmaking body was endeavoring to convict one class of persons and acquit another class for the commission of the same act; rather its attention was centered upon the unlawful use of the property in question by all classes, both non-residents of the State and non-residents of a county. Perry v. Harper, 42 Mo. 131; Bracket v. Bracket, 61 Mo. 221; Lankford v. Gibhart, 130 Mo. 641; Hope v. Flentze, 140 Mo. 398; State ex rel. v. Shepard, 218 Mo. 666; Brewery v. Forgey, 140 Mo. App. 605; Norman v. Eastbum, 230 Mo. 186; Watson v. Coon, 247 Ill. 416; Railroad v. Perkins, 36 Neb. 459; Gardner v. Meeker, 169 Ill. 42.

WALKER, P. J.—Under an information filed by the prosecuting attorney of Shannon county, based upon section 794, Revised Statutes 1909, appellant was charged with driving cattle from Reynolds county into Shannon county for the purpose of herding same in the latter county. The offense charged is a misdemeanor, and is appealed to this court upon a challenge, timely urged and properly preserved, to the constitutionality of the statute. Upon a trial appellant was convicted and fined.

Appellant resided in Reynolds county, a little more than a mile from the Shannon county line. The offense is alleged to have been committed in August, 1913. In the fall of 1912 appellant told a witness that he (appellant) "expected to run his cattle over in Shannon county on Powder Mill" (a creek in that county) "and salt them there and that certain persons" (naming them) "could not keep him from it." Witnesses for the State and for the appellant testified that they had seen appellant's cattle on the range in Shannon county within a year preceding the trial; during the summer of 1912 as many as thirty or forty head of such cattle were seen, and at other times ten or fifteen head.

Appellant admitted that in the spring of 1913 he once drove his cattle for water to a pond located in Shannon county, about three-quarters of a mile from the county line. Other witnesses testified that appellant stated that he had twice so driven his cattle; appellant denies this, or that he ever drove his cattle across the county line with any other intention than to enable them to procure water.

Appellant contends that the act upon whch the information herein is based, is unconstitutional in that its title is imperfect and misleading in failing to sufficiently indicate the purport of the act. An epitome of its history is pertinent. It was first enacted in 1874 (Laws 1874, p. 47) under the following title: "An act to prevent non-residents of the State from herding or grazing their cattle on certain lands in this State." In the general revision of 1879 the act was carried forward as chapter 87, without revision, under the title of "Herding Cattle by Non-residents." In 1887 (Laws 1887, p. 27), the act was amended, the changes then made not being material here except as to the title, which was as follows: "An act to amend section 4350, chapter 87, article 1 of the Revised Statutes of the State of Missouri, relating to herding cattle by non-residents." At the succeeding decennial revision in 1889, section 4350, supra, became section 945, and was amended so as to apply to residents as well as non-residents; the title, however, was not changed, but remained as before, "Herding Cattle by Non-residents." In the regular revision of 1899, the entire chapter in regard to cattle was revised, but the title was not changed, being identical with that of 1889. In 1903 (Laws 1903, p. 57) article one of the chapter in regard to cattle was repealed, and a new article enacted in lieu thereof, the title being as follows: "An act to repeal sections [naming all of the sections of article 1], Chapter 88, Revised Statutes of the State of Missouri of 1899, en-

*Construction of Statute.*

titled 'Herding Cattle by Non-residents,' and enacting seven new sections in lieu thereof to be known as sections [naming the new sections] with emergency clause.'' It is not necessary to set forth at length the provisions of this act except to say that they applied to residents as well as non-residents.

In the revision of 1909 an effort was made to compile under appropriate chapters all statutes of a kindred nature. Much of this compilation was mechanical, and was the work of the commission appointed by the General Assembly. There was no revision of the chapter entitled ''Animals,'' and the act of 1903, supra, was simply carried forward and inserted as article 6 of said chapter under the title of ''Herding by Non-residents.'' [Chap. 6, art. 6, R. S. 1909.] In 1911 (Laws 1911, p. 89), the initial section (794) of said article 6, supra, was amended by adding certain words thereto. This prosecution is based upon the section thus amended—the title to the amendatory act of 1911 is as follows: ''An Act to amend section 794 of article 6, of chapter 6, of the Revised Statutes of 1909 of Missouri, entitled 'Herding by Non-residents' by adding certain words thereto.'' The body of the act is as follows: ''It shall be unlawful for any person to take or drive from any one county to another in this State, or from one range to another in the same county, any neat or horned cattle, mules, horses or sheep, for the purpose of herding or grazing, or causing the same to be herded or grazed, upon any of the unimproved or uninclosed lands or premises in this State. Any person violating any of the provisions of this section shall, upon conviction thereof, be punished by a fine not exceeding two hundred dollars; and each day that any such neat or horned cattle, mules, horses, or sheep shall be allowed to remain in said county, or on said range after having been unlawfully driven into said county or on said range, shall constitute a separate offense.'' [Section 794 as amended Laws 1911, p. 89.]

From the foregoing it will be seen that the title of, the statute under consideration from its initial enactment down to and including the amendment of 1911 (Laws 1911, p. 89) upon which this prosecution is based, has been confined by express terms to "Herding by Non-residents."

Emphasis may properly be placed upon the limitations of this title from the fact that it was retained in the same words in the revision of the statutes of 1889 in which the entire chapter in regard to cattle was revised, although the body of the act applied to residents as well as non-residents. More than this, in 1903 (Laws 1903, p. 57) the entire article in which the statute in question appears was repealed and a new article enacted in lieu thereof, which, although applicable, as was the statute of 1889, to residents as well · as non-residents, bore the title of "Herding Cattle by Non-residents." As we have shown, by this same insignia the act was designated in the revision of 1909 and in the amendatory act of 1911, supra.

The purpose of a title is to serve as a clear and comprehensive indicator of the purport of the act. While it may be so general in its terms as to omit reference to or the expression of matters germane to the principal features of the statute, if it sufficiently indicates the substantial purpose of the law, it will not be violative of the Constitution; but where a title descends to particulars and specifies a certain class included within the provisions of the act, to the exclusion of others, it does not sufficiently indicate the purport of the law, and is to that extent violative of the constitutional provision.

We find, therefore, in the case at bar that the body of the act contains provisions applying to residents as well as non-residents of the State, while its title, as definitely as words can convey their meaning limits its application to non-residents; under this state of facts, much as the court may be disinclined to declare

the act invalid, it cannot in the face of the plain provisions of the Constitution (Sec. 28, art. 4) do otherwise in so far as it is attempted to apply the act to residents of this State. The following authorities are apposite: In State v. Rawlings, 232 Mo. 1. c. 557, it is held that where the title of an act descends into details and attempts to point out a particular class of persons to which the law is intended to apply, it will not support a law leveled against a wholly different class of persons not mentioned in such title; and in State v. Great Western Coffee and Tea Co., 171 Mo. 634, it was held that a title leveled only against manufacturers of certain baking powders would not support a statute prohibiting persons from selling such baking powders; and in St. Louis v. Wortman, 213 Mo. 131, the title purported to "create the office of dairy commissioner and define his term, duties and powers" and it was held this would not give validity to a section which sought to prohibit individuals from selling impure dairy products; so in State v. Fulks, 207 Mo. 26, it was held that the title which referred only to the sale of intoxicants was not broad enough to authorize a provision in the body of the act prohibiting the giving away of intoxicants.

Holding, as we do, the title of the act misleading and insufficient to indicate that residents are included within its provisions, we declare the law invalid so far as it is attempted to apply it to this class.

From the foregoing it follows that the judgment of the trial court should be reversed. It is so ordered.

*Brown* and *Faris, JJ.,* concur.