STATE OF MISSOURI, at the Relation of the DEPARTMENT OF PENAL INSTITUTIONS of the State of Missouri; STRATTON SHARTEL, Attorney-General of the State of Missouri, and DELPH C. SIMONS, LESLIE RUDOLPH, DWIGHT H. BROWN, J. H. H. MOTE and E. B. JULIAN, the Members Composing the Commissioners of the DEPARTMENT OF PENAL INSTITUTIONS of the State of Missouri, Relators, v. CHARLES U. BECKER, Secretary of State of the State of Missouri; O. G. STEININGER, Commissioner of Motor Vehicles of the State of Missouri, and S. G. ADAMS COMPANY, a Corporation.—47 S. W. (2d) 781.

Court en Banc, March 15, 1932.

*Stratton Shartel*, Attorney-General, *Edward G. Robison* and *Henry H. Stern*, Assistant Attorney-Generals, for relators.

*P. H. Cullen, Charles L. Moore* and *Conway Elder* for respondent.

1046

GANTT, J.—Original proceeding in mandamus. Relators, Department of Penal Institutions et al., seek cancellation of a contract awarded to respondent Adams Company by respondents, Secretary of State and Commissioner of Motor Vehicles. The contract is an agreement on the part of the Adams Company to manufacture and furnish the State with automobile license plates and chauffeurs' badges for the year 1932, as per bid and specifications. Relators further seek to compel respondents Secretary of State and Commissioner of Motor Vehicles to award said contract to the Department of Penal Institutions, or Prison Board. The pleadings are not challenged.

Relators contend that under certain statutes the board was and is authorized to manufacture and furnish said articles to the State,

and that under the facts in evidence it was and is the duty of respondents to award the contract to the board.

The principles of law governing penal institutions and the right of such institutions to manufacture and sell commodities are well settled. The power to control such institutions is vested in the legislative branch of the government and is provided for by statutes. [50 C. J. 332; 22 Amer. & Eng. Ency. L. (2 Ed.) p. 1299, sec. 3.] Our General Assembly has enacted enabling statutes on the subject. [2 R. S. 1929, p. 2352, ch. 44, Penal Institutions.] This chapter contains nine articles, Sections 8316 to 8555, Revised Statutes 1929. It covers the subject. Of course, it provides for the creation of the Department of Penal Institutions or Prison Board. It also fixes the powers of the board, among which is the power given in Section 8340 to provide for the employment of persons confined in said institutions by leasing, purchasing or otherwise providing plants, machinery, equipment and material to manufacture articles as follows:

(1) Those needed in our penal or reformatory institutions.
(2) Those required in our public buildings and offices.
(3) Those used in the erection of building or other improvements in or connected with state institutions or properties.
(4) Those used in the construction or improvement of state or county highways.
(5) Lime and binding twine to be used for agricultural and other purposes in the State.
(6) The ''board may purchase or lease upon reasonable terms such machinery as may be necessary for the manufacture and production of any other articles or products that may be disposed of upon the open market at a profit to the State, including shoes, clothing, flour, mats, mops, rugs, carpets and other articles of furniture, such as beds and bedding of all kinds; also desks, chairs, tables, farm implements, fertilizer, brick or any other articles agreed upon by the board.''

The power of the board to provide for the employment of convicts is further limited by Section 8343, which follows:

''Except as in Section 8340, hereinabove provided, the leasing or contracting of convict labor in any form or manner, directly or indirectly is hereby prohibited.''

Relators must point to the statute authorizing the Prison Board to manufacture license plates and chauffeurs' badges for the State. In other words, the board must be authorized to enter into the contract in question. In this behalf relators timidly suggest that such authority is granted in paragraph six (as above set forth) of Section 8340 in that the board is therein authorized to manufacture and sell upon the open market any article that may be agreed upon by the

board. Respondents suggest that license plates and chauffeurs' badges are manufactured and sold as per specifications in a contract and are not articles sold on the open market. It will not be necessary to determine this question, for relators plead that as a matter of law it is the duty of respondents Secretary of State and Commissioner of Motor Vehicles to award the contract to the board. In other words, they claim the contract under Section 7760, Revised Statutes 1929. Thus it appears that the board is not seeking to manufacture said articles for the open market.

Relators next contend that Section 7760 of the Motor Vehicle Act amended by implication Sections 8340 and 8343 of the Penal Institutions Act, and authorized the board to manufacture license plates and chauffeurs' badges for the State. The pertinent part of Section 7760 follows:

"The commissioner shall advertise for bids for the manufacture of number plates and chauffeurs' badges in at least two (2) daily papers published in the State and shall let the contract therefor to the lowest bidder; the commissioner may reserve the right to reject any and all bids; *Provided, however,* the commissioner shall contract with the prison board for the manufacture of such plates and badges whenever the prison board is equipped with the necessary machinery for the manufacture of such plates, provided the said board will make the same at a cost equal or less than the best obtainable prices from other sources."

Respondents concede the contention, if the last two provisos of Section 7760 are valid, but they plead that said provisos violate Section 28, Article IV of the Constitution of Missouri, which follows:

"No bill . . . shall contain more than one subject, which shall be clearly expressed in its title."

In this connection it should be stated that the right of respondent officers to question the constitutionality of said provisos need not be decided because the respondent Adams Company is an interested party, and as such authorized to raise the question.

The general rule by which the question must be determined is set forth in many decisions of this court. We are committed to a liberal construction of Section 28, Article IV of the Constitution. [State ex rel. v. Terte, 23 S. W. (2d) 120; Asel v. City of Jefferson, 287 Mo. 195, 229 S. W. 1046; State v. Price, 229 Mo. 670, 129 S. W. 650; State v. Ward, 40 S. W. (2d) 1. c. 1076; Star Square Auto Supply Co. v. Gerk, 30 S. W. (2d) 447, 1. c. 453; State v. Mullinix, 301 Mo. 385, 1. c. 390, 257 S. W. 121; State ex rel. v. Miller, 100 Mo. 439, 1. c. 444, 13 S. W. 677.]

On the other hand we have not hesitated to rule an act or part of an act unconstitutional when the legislation was clearly outside the title. [State ex inf. v. Borden, 164 Mo. 221, 64 S. W. 172; Vice v.

Kirksville, 280 Mo. 348, 217 S. W. 77; State ex inf. Barrett v. Imhoff, 291 Mo. 603, 238 S. W. 122; State ex rel. v. Wiethaupt, 231 Mo. 449, 133 S. W. 329; State ex rel. v. Gordon, 233 Mo. 383, 135 S. W. 929; State v. McEniry, 269 Mo. 228, 190 S. W. 272; State ex rel. v. Gideon, 277 Mo. 356, 210 S. W. 358; Southard v. Short, 8 S. W. (2d) 903; State v. Hurley, 258 Mo. 275, 167 S. W. 965; State v. Sloan, 258 Mo. 305, 167 S. W. 500, 501, 502; St. Louis v. Wortman, 213 Mo. 131, 112 S. W. 520; State ex rel. Niedemeyer v. Hackman, 292 Mo. 27, 237 S. W. 742; Mayes v. United Garment Workers of America, 6 S. W. (2d) 333.]

The purpose of this provision of the Constitution is stated by a standard text as follows:

"First, to prevent hodge-podge or 'log-rolling' legislation; second, to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire." [1 Cooley's Const. Lim. p. 296.]

And we have ruled as follows:

"The object of the constitutional provision was to require so clear an expression of the subject of the bill in the title, that it would at once apprise legislators and others interested of the precise subject of the proposed legislation." [City of Kansas v. Payne, 71 Mo. 159, l. c. 162.]

"The evident object of the provision of the organic law relative to the title of an act was to have the title like a guide board, indicate the general contents of the bill, and contain but one general subject which might be expressed in a few or a greater number of words. If those words only constitute one general subject; if they do not mislead as to what the bill contains; if they are not designed as a cover to vicious and incongruous legislation, then the title can stand on its own merits, is an honest title and does not impinge on constitutional prohibitions." [St. Louis v. Weitzel, 130 Mo. 600, l. c. 616, 31 S. W. 1045.]

"The title (to the bill) must express the subject of the act in such terms that the members of the general assembly and the people may not be left in doubt as to what matter is treated of." [State v. Burgdoerfer, 107 Mo. 30, 17 S. W. 646.]

"Adjudicated cases do not, as a general rule, afford us much assistance in passing upon questions of this character, other than in a general way, as each case must be adjudged according to its own peculiar facts and the directness or remoteness, as the case may be,

1050

of its provisions to matters in consonance with its title.'' [Witzmann v. The S. Ry. Co., 131 Mo. 612, l. c. 618-619, 33 S. W. 181.]

''No definite rule to test the sufficiency of titles of enactments has yet been formulated. Each case must be adjudicated upon the special facts it exhibits, having regard to the cogent reasons of public policy which led to the adoption of the constitutional provision. Those reasons are part of the history of legislation in this country (State ex rel. v. Ranson (1880), 73 Mo. 86), and, in discharging our duty of giving effect to the commands of the people, expressed in the Constitution, we cannot ignore them.'' [State ex rel. K. C. Park Dist. v. County Ct. of Jackson Co., 102 Mo. 531, l. c. 537, 15 S. W. 79.]

Having in mind the rule, we will consider the title. It descends to particulars. As such it contains eighteen items. We think the particulars are stated as the subject of the act. [State ex rel. v. Hackman, 292 Mo. 27, l. c. 32; 237 S. W. 742.] But whether the particulars or the general subject be considered the subject of the act is of no consequence, because the question is: Does the bill contain more than one subject? Only one item of the particulars may be said to cover plates and badges. Therefore, it will not be necessary to set forth all the items. They may be found in Laws of 1921, Extra Session, page 76. The pertinent part of the title follows:

''Motor Vehicles: Repealing Chapter 71, R. S. of Mo., 1919, Relating to Motor Vehicles and Enacting a New Chapter—Authorizing Appointment of a Commissioner of Motor Vehicles, and Defining his Powers and Duties.

''An Act to repeal Chapter 71, Revised Statutes of Missouri of 1919, entitled 'Motor Vehicles,' and to enact in lieu thereof a new chapter providing:

''For the registration of, fees to be charged and collected therefor, and the display of number plates on motor vehicles and trailers;''

The challenged provisos follow:

''Provided . . . the commissioner shall contract with the prison board for the manufacture of such plates and badges whenever the prison board is equipped with the necessary machinery for the manufacture of such plates, provided the said board will make the same at a cost equal or less than the best obtainable prices from other sources.''

Relators insist that these provisos are covered by the title to the Motor Vehicle Act. It must be admitted that the sole purpose of the provisos was to enlarge the field of employment of convicts and thereby amend the Penal Institutions Act. In other words, the subject of the provisos is the manufacture of certain articles by convicts. The furnishing of said articles to the State is merely incidental to the subject of the employment of the convicts. The employment of persons confined in our penal institutions is a matter of public concern and has always been separately treated by the legislative branch of

our government. Motor vehicles and the employment of convicts are clearly disconnected matters. They are different subjects and cannot lawfully be incorporated in the same bill.

But even if the two subjects could be lawfully incorporated in the same bill, the provisos are invalid because the subject (the employment of convicts) is not "clearly expressed in the title" to the Motor Vehicle Act. On this question relators rely on a liberal construction of said title. There is no ambiguity in the title and therefore nothing to construe. As stated by relators, "motor vehicles" form the groundwork of the act. Of course, all matters germane to this subject may be incorporated in the act. But the provision for the manufacture of plates and badges by convicts is not germane to the subject "motor vehicles." It has no natural connection with said subject, and there is no word in this title tending to even cause a suspicion that hidden away in one of the thirty-two sections of the bill are provisos providing for the manufacture of plates and badges by convicts. No member of the Legislature or the public could have been notified by this title, that the bill dealt with the employment of convicts. For the reasons stated, the provisos are unconstitutional and invalid.

The suggestion that the provisos are valid under the rule that the title need not recite provisos and exceptions appearing in the bill cannot be sustained for the reason these provisos are not germane to the subject. [25 R. C. L. 857.] Furthermore, the provisos inject into the bill a foreign subject. These conclusions make it unnecessary to rule the other questions presented.

The peremptory writ is denied and the alternative writ quashed. *White, Frank* and *Henwood, JJ.,* concur; *Atwood, C. J.,* dissents in separate opinion in which *Ragland* and *Ellison, JJ.,* concur.

ATWOOD, C. J. (dissenting)—The decision reached in the majority opinion rides off on the holding that the Department of Penal Institutions has no power to manufacture license plates and chauffeurs' badges because the proviso in Section 7760, Revised Statutes 1929, as an enactment conferring such power, is ruled to be in violation of Section 28, Article IV of the Missouri Constitution. It is my view that such power is well vested in the commissioners of this department, frequently referred to as The Prison Board, not by anything appearing in Section 7760, but by the provisions of Section 8340, Revised Statutes 1929. If this position is well taken the constitutional objection, upon which the majority opinion rests, drops out of the case.

Section 8340, after directing the Board "to purchase, lease or otherwise provide suitable plants, machinery and equipment, and to purchase material, for the employment of all able-bodied persons in

the Missouri state penitentiary, the Missouri reformatory, the industrial home for girls, the industrial home for negro girls, or any other penal or reformatory institutions hereafter created, for such industries as in the opinion of the board will best occupy such persons, with the view of manufacturing, so far as may be practicable, such articles agreed upon by said board as are needed in any of the institutions hereinabove in this section mentioned or referred to, also such as are required by the State or political subdivisions thereof, in the buildings and offices of the institutions owned, managed or controlled by the State or political subdivision thereof, also including articles and material to be used in the erection of buildings or other improvements upon, in, or in connection with, any state institutions or state properties, or in the construction, improvement or repairs of any state highways or county highways, including bridges and culverts; including lime to be used for agricultural and other purposes in this State; also including binding twine for use of farmers and others in this State;'' further provides that ''said board may purchase or lease upon reasonable terms such machinery as may be necessary for the manufacture and production of any other articles or products that may be disposed of upon the open market at a profit to the State, including shoes, clothing, floor mats, mops, rugs, carpets and other articles of furniture, such as beds and bedding of all kinds; also desks, chairs, tables, farm implements, fertilizer, brick or any other articles agreed upon by the board.''

Respondents' brief casually disposes of the foregoing provisions with the observation that ''license plates are not 'articles or products sold on the open market,' and hence are not embraced within the language of said Section 8340.'' The majority opinion treats of them as follows: ''Respondents suggest that license plates and chauffeurs' badges are manufactured and sold as per specifications in a contract and are not articles sold on the open market. It will not be necessary to determine this question, for relators plead that as a matter of law it is the duty of respondents Secretary of State and Commissioner of Motor Vehicles to award the contract to the board. In other words, they claim the contract under Section 7760, Revised Statutes 1929. Thus it appears that the board is not seeking to manufacture said articles for the open market. The suggestion of the Prison Board is overruled.''

The expression, *non sequitur,* so familiar in logic, fairly applies to the above course of reasoning and conclusion reached. From the mere fact that relators here seek to compel the Secretary of State and the Commissioner of Motor Vehicles to contract with the prison board for this particular lot of plates and badges pursuant to the proviso in said Section 7760, it by no means follows that the board's authority to manufacture license plates and chauffeurs' badges must

appear in Section 7760, or that these articles are not such "articles or products that may be disposed of upon the open market at a profit to the State," which under the provisions of Section 8340, supra, the prison board is authorized to manufacture and produce. I think the very question thus suggested by respondents must be determined, and the plain meaning of Section 8340 requires that it be ruled contrary to respondents' contention.

No reason is suggested, and I can think of none, why the prison board may not dispose of license plates and chauffeurs' badges on a competitive or open market to any state, municipality or person willing and able to buy. It is a matter of common knowledge that such articles are usually bought and sold in open, public, unrestricted competition. The record here shows that the contract now sought by relators is the result of unrestricted competition, or an effort to sell on the open market, and that performance by the prison board would mean great profit and saving to the State. And yet, according to the majority opinion, respondents claim that the board is not authorized to produce these articles because they "are manufactured and sold as per specifications in a contract and are not articles sold on the open market." So are shoes, clothing and other articles named in the last above quoted clause of Section 8340 "sold as per specifications in a contract," frequently in large quantities to be manufactured for a particular customer and for a particular purpose and subject to all the details, specifications and regulations that commonly attend competitive bidding, just as was done in this instance.

The evident purpose of Section 8340 is to help effectuate a sound, humane public policy with reference to employment of inmates of penal institutions, and its provisions should be liberally construed. Our approval of respondents' narrow and unwarranted interpretation of this statute can but give rise to confusion and doubt as to the prison board's power, heretofore unquestioned, to engage in other lines of manufacture and production upon the successful continuance of which great public interest depends. Such approval should not be given, and for reasons herein stated I respectfully dissent. *Ragland* and *Ellison, JJ.*, concur.