GERTRUDE SOUTHARD, Appellant, v. W. BLAINE SHORT.—8 S. W. (2d) 903.

Division One, July 30, 1928.

*Allen & Allen* for appellant.

*G. W. Thornberry* and *Rufe Scott* for respondent.

934

GENTRY, J.—This suit was instituted in the Circuit Court of Stone County, but the venue was changed to Webster County. It is an action in two counts. The first count alleged that the plaintiff and defendant belonged to the white race; that plaintiff is the mother of an infant child, Bobbie Blaine Short, and that the defendant is the father of said child, which was conceived in Missouri and born out of wedlock. The petition further stated that at the time of the birth of said child, the plaintiff and defendant were not married to each other but were both single, and that they have not married since then. Prayer was then made for judgment and decree to the effect that the defendant was the father of said child, that the child bear his name and for such other orders and judgments as might to the court seem proper. The second count, after containing the same allegations as the first, alleged that plaintiff did not have the means to support said child; that the defendant possessed real and personal property, was an able-bodied man and capable of earning a good income, and that plaintiff had paid out large sums of money at the time, prior and since the birth of said child for food, clothing and other necessities for herself and child, which the defendant neglected, failed and refused to provide. There was a further allegation that plaintiff was without means to prosecute this action or to pay an attorney's fee to establish the paternity of her child. Prayer was then made that the court adjudge defendant to be the father of the child, that said child should bear his name, and that the plaintiff have and recover from defendant such sums as to the court may seem reasonable and proper for money expended in support of said child in the past as well as in the future. In due time, defendant filed a demurrer, which challenged the sufficiency of the petition to state a cause of action, and which also challenged the act of the Legislature of Missouri, approved March 31, 1921, Section 311a, Laws of Missouri, 1921, page 118, as being in violation of Article IV, Section 28, Constitution of Missouri. The trial court sustained the demurrer, and plaintiff refused to further plead; hence this appeal.

The question uppermost in this case is, was the act in question passed in accordance with the provisions of the Missouri Constitution. Article IV, Section 28, of the Constitution provides: "No bill" (except general appropriation bills, which may embrace the various subjects and accounts for and on account of which moneys are appropriated, and except bills passed under the third subdivision of Section 44 of this article) shall contain more than one subject, which shall be clearly expressed in its title."

The question raised by the demurrer is, does the title of the Act of 1921 conform to this constitutional requirement. By referring to Laws of Missouri 1921, page 117, we read in the title thereof, "An Act to repeal Sections 311, 312, and 314 of Article XV of Chapter 1 of the Revised Statutes of Missouri for the year 1919, entitled 'Descents and Distributions,' and to enact four new sections in lieu thereof, all relating to the descents and distributions of estates and to form a part of said Article XV of said Chapter 1, said sections to be designated and numbered, respectively, as Sections 311, 311a, 312 and 314."

Section 311a, which is the section challenged by this demurrer reads as follows:

"**Child Born Out of Wedlock Authorized to Institute a Suit, When.**—Whenever any child shall have been born out of lawful wedlock and the father and mother of such child shall not thereafter intermarry, then the mother of such child or any person of kin within the second degree of consanguinity shall be authorized to institute a suit in the circuit court having competent jurisdiction, the object and purpose of which shall be the obtaining of a decree establishing the paternity of said child; the practice and proceedings relative thereto shall be the same as in ordinary civil cases; providing however, that no suit shall be instituted for the establishment of such paternity wherein the child and the alleged father do not belong to the same race."

By referring to the article of Revised Statutes 1919 on the subject of descents and distributions, it will be seen that said article is not XV but Article XIV. Article XV refers to dower, while Article XIV concerns descents and distributions.

A further question involved is, does Section 311a, which provides for the bringing of a suit by a child born out of lawful wedlock against his father, and the practice and proceedings incident to such a suit properly come under the heading "Descents and Distributions of Estates."

Our Constitution very wisely provides the method for the enactment of a statute by our lawmaking body. The framers of the Constitution knew that many bills would be introduced into the General

Assembly at each session, and legislators and citizens of our State learn of that fact at least every two years. During the Fifty-first General Assembly, there were 755 bills introduced in the House, and 555 bills introduced into the Senate, besides committee substitutes, as will appear from the journals of the House and of the Senate of 1921. The time for the consideration of so many bills has always been limited; hence the chance for legislative mistakes is great. The constitutional provision that the subject of the bill shall be clearly expressed in its title enables the lawmakers as well as the public to readily understand the contents of the proposed piece of legislation, and aids the former to vote intelligently thereon. Our courts have not given this provision a narrow construction, but have upheld acts whenever the subject thereof was sufficiently stated in the title; but the most beneficent act must be passed according to constitutional provisions.

In a case where the title of an act defining indemnity contracts did not correctly state the substance of the body thereof, which was a declaration that certain contracts should not constitute insurance contracts, this court held that the constitutional provision above referred to had been violated. [State ex rel. v. Revelle, 257 Mo. l. c. 539.]

Where the title of a statute purported to regulate the employment of children of designated ages, a section in the body of the act which prohibited the employment of such children was held to be invalid by a decision of this court, speaking through Judge WHITE. [Berry v. Majestic Milling Co., 284 Mo. l. c. 192.]

In discussing the importance of following this constitutional provision, Judge SHERWOOD said: "The evident object of the provision of the organic law relative to the title of an act was to have the title, like a guide board, indicate the general contents of the bill, and contain but one general subject which might be expressed in a few or a greater number of words." [St. Louis v. Weitzel, 130 Mo. l. c. 616.]

Where an act was entitled "Of Cities, Towns and Villages," and the body of the act provided for the formation of a park district and for the appointment of park commissioners, the location of a park partly within and partly without a city and for the levying of taxes for the benefit of such park, this court, by Judge BARCLAY, held that while the subject of public parks is intimately connected with that of a municipal government, yet the act in question could not fairly be construed as being embraced within the title thereof. [State ex rel. v. County Court, 102 Mo. l. c. 539.]

And Judge FOX, in a case where the title of an act stated that the act was to prevent the use of unhealthy chemicals or substances in the

preparation or manufacture of any articles used in the preparation of food, but the body of the act prohibited the manufacture and sale of said article, held that such act did not follow the title, and cited numerous cases in support thereof. In referring to this clause of the Constitution he said: "We take it that the provisions in the body of the act must be germane to the subject in the title. In other words, they must be closely allied, fit and appropriate, of similar nature, to the subject designated in the title." [State v. Coffee & Tea Co., 171 Mo. 1. c. 642.]

And this court also said: "The title must express the subject of the act in such terms that the members of the General Assembly and the people may not be left in doubt as to what matter is treated of. The terms of the title must be such as to unequivocally put everyone upon inquiry into the contents of the bill." [State v. Burgdoerfer, 107 Mo. 1. c. 30.]

On the subject of such a constitutional provision, an eminent author says: "It may therefore be assumed as settled that the purpose of these provisions was: *First*, to prevent *hodge-podge* or 'log-rolling' legislation; *second*, to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and, *third*, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire." [1 Cooley on Constitutional Limitations (8 Ed.) pp. 295-6.] Numerous authorities to the same effect could be cited from other states, states which have the same or a similar constitutional provision.

Turning now to the act in question it will be seen that the title thereof says that it relates to "Descents and Distributions of Estates." Webster defines descent as being "Derivation, as from an ancestor; procedure by generation, lineage, birth, extraction. Transmission or devolution of an estate by inheritance." He also defines distribution as, "A distribution or state of being distributed; division or apportionment among several or many."

Descent is further defined by Black as "hereditary succession. Succession to the ownership of an estate by inheritance, or by any act of law, as distinguished from 'purchase.'" [Black's Law Dict., p. 359.] The same author defines distribution as "the apportionment and division, under authority of a court, of the remainder of the estate of an intestate, after payment of the debts and charges among those who are legally entitled to share in the same." [Black's Law Dict., p. 381.]

And further: "Descent or hereditary succession is the title whereby a person, on the death of his ancestor, acquires his estate as an heir of the law." [9 Am. & Eng. Ency. Law, p. 400.]

The same authority defines distributions as follows: "Distribution is defined to be the division by order of the court having authority, among those entitled thereto, of the personal estate of an intestate after payment of the debts and charges, and sometimes the division of a residue both real and personal estate, and also the division of an estate according to the terms of a will." [9 Am. & Eng. Ency. Law, p. 660; 1 Bouvier's Law Dict., p. 852.]

It cannot be said that the section of the statute providing for the institution of a suit by the mother of a child born out of wedlock against the reputed father of such child to obtain a decree establishing paternity properly comes under the subject of "Descents and Distributions of Estates." Such a title could not be properly termed "an index finger" pointing the inexperienced legislator, or even the experienced legislator, to the substance of this proposed new section of the statute; neither would such a title be a "guide post" for the many good people of our State who are interested in legislation.

The General Assembly, in trying to amend an act, not only mentioned that act by the wrong number, but attempted to pass a new section, Section 311a supra, which does not pertain to the same subject but to a subject entirely different. Said section, not having been enacted according to the constitutional provision, it becomes our duty to say that the same is void and furnishes no authority for the institution of the suit herein. The trial court having held in accordance with this opinion, the judgment of that court is affirmed. All concur.