STATE of Missouri, at the Relation of NORMANDY SCHOOL DISTRICT OF ST. LOUIS COUNTY, Missouri, and the Curators of the University of Missouri, Relators,

v.

Fred R. SMALL, as President of the School Board of the Normandy School District of St. Louis County, Missouri, Respondent.

No. 49177.

Supreme Court of Missouri,

En Banc.

April 9, 1962.

Rehearing Denied May 14, 1962.

John H. Lashly, St. Louis, for relator Normandy School Dist. of St. Louis County, Paul M. Peterson, Columbia, for relator The Curators of the University of Missouri, Lashly, Lashly & Miller, St. Louis, of counsel.

John B. Sharpe, St. Louis, for respondent.

Hayes & Hayes, James P. Hayes, St. Louis, for amicus curiae.

DALTON, Judge.

This is an original proceeding in mandamus. Our alternative writ was issued upon relators' application therefor and respondent's waiver of service and acceptance of the application as the alternative writ. After the filing of respondent's return, the parties filed a stipulation as to the facts, whereupon relators filed their motion for judgment notwithstanding respondent's return.

Relator Normandy School District is a city school district duly organized and existing under the laws of the State of Missouri. Section 165.263 RSMo 1959, V.A.M.S. Relator, The Curators of the University of Missouri, is a legal entity of the State of Missouri duly existing under the Constitution of the State of Missouri [Sections 9(a) and 9(b), Article IX, Constitution of Missouri, V.A.M.S.], and designated as a body politic by Section 172.020 RSMo 1959, V.A.M.S. Respondent, Fred R. Small, is and was at all the times mentioned herein the duly elected, qualified and acting President of the Board of Directors of Normandy School District of St. Louis County, Missouri, and as such it was his duty among other things to execute lawful and properly authorized conveyances of real estate on behalf of the District.

By this proceeding in mandamus, relators seek to compel respondent to execute a deed conveying certain described property of the relator Normandy School District to The Curators of the University of Missouri under the provisions of a contract entered into by and between the parties, relators herein. The contract resulted from a resolution adopted by The Board of Curators of the University of Missouri at its October 27, 1961 meeting, which resolution authorized the making of a particular offer to the Board of Education of the Normandy School District. The resolution, after the recital of numerous alleged facts in whereas paragraphs, authorized the President and Business Manager of the University to negotiate with the Normandy School District for the transfer to it of a particularly described tract of land, consisting of approximately 128 acres of land with improvements, owned by the Normandy School District and located therein at 8001 Natural Bridge Road, St. Louis County, and further authorized and directed the making of a firm offer to said Normandy School District that, " * * * if it can and will transfer marketable title to the University, the University will pay the School District the sum of $60,000.00 therefor." Various conditions were ordered to be joined in the offer, including the following provision: "That title shall be conveyed to The Curators of the University of Missouri by warranty deed for use in its educational purposes, subject only to taxes and restrictions and encumbrances of record and that a final decision shall be obtained from the

Supreme Court holding that the School District is authorized to make this transfer."

The offer was communicated to the Normandy School District by the letter of the President of the University, dated October 27, 1961, in accordance with the said resolution adopted by The Board of Curators of the University. Thereafter, on November 4, 1961, the Normandy School District accepted the mentioned offer and agreed to take steps to promptly comply with the conditions stated in the offer. The acceptance was purportedly authorized by a resolution adopted by the Normandy School District which purported to state the reasons for the acceptance. Included in the resolution authorizing acceptance of the offer was a provision that if, after acceptance, " * * * it is determined by the Supreme Court that the District cannot convey title as herein provided, both parties shall be released from the terms of this contract."

Thereafter, the form for a general warranty deed conveying the particularly described property to The Curators of the University of Missouri " * * * in consideration of the sum of Sixty-Thousand Dollars ($60,000.00) and other good and valuable consideration * * *" was prepared and submitted to the president of said School District Board (respondent), who refused to execute it on behalf of said School District. The proposed deed would have conveyed the mentioned property to The Curators of the University of Missouri "subject to all restrictions and easements of record," with a habendum clause, as follows: "To Have and to Hold the same, together with all rights and appurtenances to the same belonging, unto the Party of the Second Part, and to its transferees, successors and assigns so long as used for its educational purposes."

The stipulation of facts recites that the Normandy School District of St. Louis County comprises an area of approximately fifteen square miles; that it has a population of approximately 52,000 people, and has twenty-six separate incorporated areas within its boundaries; that on September 20, 1958, the voters of the School District approved a $625,000 bond issue to enable said School District to purchase the property here involved; that the 128 acres, with the then existing improvements, were purchased in 1959; that the purchase price was $600,000; and that, when said bond issue was approved by the voters, it was determined that a tax of five cents per $100 valuation of real property for a period of twenty years would be necessary to retire said bonds; and that subsequent to the acquisition of the property by the School District, an increase in the value of real property within the School District, as determined by a reassessment thereof, caused the tax to be reduced to 3.8 cents for $100 assessed valuation to retire said bonds in twenty years. There is no stipulation or other evidence as to the actual market value of the property on November 4, 1961.

Relators' statement of facts, which has the approval of the respondent, recites that: "On the 13th day of May, 1960, by authority of Section 70.220, R.S.Mo., the University of Missouri and the School District entered into a contract for the joint use of this property for the purpose of establishing and operating a Junior College under the name of University of Missouri—Normandy Residence Center, under which the District was to recondition the club house and ready the property for school purposes, and the University was to furnish the teaching staff and give the institution the benefits of the University's own curriculum for the first two years of college work, and the dignity and sanction of the University itself as a goal for students finishing the 14th grade in said Residence Center."

It is further admitted "that the School Board of relator School District, at a regularly called and duly held meeting on November 4, 1961, made determinations: (1) that the aforesaid property located at 8001 Natural Bridge Road in said School District is not required for the use of the School

District, (2) that the said property could be used for purposes of offering education beyond grade twelve by an institution of higher education, and particularly by the University of Missouri, (3) that the taking over of the Junior College now designated as University of Missouri—Normandy Residence Center by The Curators of the University of Missouri for use by it for its educational purposes would be of great and inestimable value to the residents of Normandy School District and to the youth residing therein and others seeking such advantages, (4) that it would be to the best educational interest of the Normandy School District to transfer the aforesaid property to The Curators of the University of Missouri for use in its educational purposes, (5) that the said written offer of The Curators of the University of Missouri then before the Board was fair and reasonable considering the educational and other advantages that would be afforded to the relator School District and the entire community, and (6) that said offer should be accepted."

The record, however, fails to show that any specific obligation was to be assumed by The Curators of the University of Missouri in exchange for the conveyance of the mentioned real estate to it "for use in its educational purposes," other than the payment of $60,000, although the stipulation of facts signed by the parties does recite that: "Upon acquisition of the subject property by the Board of Curators, the University will continue to operate the facility as a two-year college financed by student fees, until such time as the legislature shall authorize its expansion and the development of further facilities on the site." No such proposition was incorporated in the offer submitted to the School District by the president's letter of October 27, 1961.

We need not here relate other detailed facts and circumstances alleged in the application for the alternative writ of mandamus, mentioned in the stipulation of facts filed by the parties, or set out in the statement in relators' brief, all tending to show that it is highly desirable and would be extremely beneficial to both of the relators and to the general public that the contract between the relators be carried into effect by the execution and delivery of the mentioned deed.

■ Relators contend that the relator School District is empowered to make the conveyance in question under the provisions of Section 165.833 RSMo 1959, V.A.M.S. (Senate Bill No. 7, Section 14, Laws 1961); that Section 165.833 RSMo 1959, V.A.M.S. is a valid and constitutional legislative enactment, since the title of Senate Bill No. 7, Laws 1961, and the provisions of Section 14 (Section 165.833 RSMo 1959, V.A.M.S.) fairly relate to the same subject and have a natural connection with that subject; and that transfers under Section 165.833 RSMo 1959, V.A.M.S. are not governed by the provisions of Section 165.370 RSMo 1959, V.A.M.S.

The title of Senate Bill No. 7 is as follows: "An Act to provide for the formation of junior college districts and to establish the powers and duties of the state board of education with respect thereto."

Section 14 of Senate Bill No. 7, now Section 165.833 RSMo 1959, V.A.M.S., is as follows: "Whenever there is within any school district any school property that is not required for the use of the school district and such property could be used for purposes of offering education beyond grade twelve by an institution of higher education, *the board of education is hereby authorized to lease or sell and convey the same to such public institution,* and the proceeds derived from such sale shall be placed to the credit of the building fund of such district." (Italics ours.)

Section 23 of Article III of the Constitution of Missouri 1945, in part, provides: "No bill shall contain more than one subject which shall be clearly expressed in its title * * *."

Section 165.370 RSMo 1959, V.A.M.S. (effective since 1909), in part, provides: "* * * and whenever there is within the district any school property that is no longer required for the use of the district, *the board is hereby authorized to advertise, sell and convey the same,* and the proceeds derived therefrom shall be placed to the credit of the building fund of such district." (Italics ours.)

Section 165.317 RSMo 1959, V.A.M.S. provides: "The government and control of such town or city school district shall be vested in a board of education of six members * * *."

Respondent contends that a school district has no power to sell its property in any other manner than directed by Section 165.370 RSMo 1959, V.A.M.S.; that the proposed sale by School District to the University does not conform to the statutory directions; that Section 165.833 RSMo (Senate Bill No. 7, Section 14, Laws 1961) is unconstitutional and void under Section 23, Article III, Constitution of Missouri 1945 in that the subject of said section is not germane to the general subject of the Act; that the subject of Section 165.833 is not clearly expressed in the title; and that the proposed sale to the University of Missouri is void and cannot be made.

Relators argue that the title of an act need not embrace every detail of the legislation contained in it; that all the Constitution requires is that the subjects embraced in the act shall be fairly and naturally germane to that recited in the title; that the provisions of Section 165.833 are fairly relevant to the general purposes of the Act in question; and that the particular provisions of Section 165.833 are germane to the wide purposes announced in the title of the Act and are connected with its subject matter. Relators also say that the subject matter of Section 165.833 and the title of the Act are entirely compatible, because the general subject of the section and purposes of the Act are to further education beyond the twelfth grade. Relators also insist that "the fact that the title refers *to the formation* of junior college districts, and Section 14 refers *to the transfer* of property by a school district does not create an incongruous, unnatural or disconnected relation between the title and that section." Relators say that "Section 165.833 makes special provisions for the transfer of school property from school districts to other educational institutions of the State," but insists that the provisions apply only "in those instances where the transferred property is to be used by the transferee for educational purposes." Relators further say that the section "requires a private sale and the purposes contemplated by the Legislature can be accomplished only by direct negotiations between the respective educational institutions, rather than by an advertised public sale."

Relators and respondent, in their respective briefs, cite and rely upon Edwards v. Business Men's Assurance Co., 350 Mo. 666, 168 S.W.2d 82, 92, which construed Section 28, Article IV of the Constitution of Missouri 1875, the substance of which is now Section 23, Article III of the Constitution of Missouri. In that case the Court said:

"The purpose of the constitutional provision, supra, has been stated as follows: 'First, to prevent hodge podge or "log rolling" legislation; second, to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the titles gave no intimation and which might therefore be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered in order that they have opportunity of being heard thereon, by petition or otherwise, if they shall so desire.' State ex rel. United Railways Co. v. Wiethaupt, 231 Mo. 449, 459, 133 S.W. 329, 331; Southard v. Short, 320 Mo. 932, 8 S.W.2d 903.

"In the case of State v. Hurley, 258 Mo. 275, 278, 167 S.W. 965, 966, the court said: 'The purpose of the constitutional provision (section 28, art. 4, Const.Mo.) is that the title shall generally indicate what the act contains, and by the terms "generally indicate" we mean that it shall refer in a comprehensive manner to the subject-matter of the enactment; but it need not necessarily refer to subordinate matters connected therewith or reasonably within the purview of the statute.'

"The provision requires that matters which are incongruous, disconnected and without natural relation to each other must not be joined in one bill, and the title must be a fair index of the matters in the bill. State ex rel. Niedermeyer et al. v. Hackmann, 292 Mo. 27, 31, 237 S.W. 742. It does not prevent the inclusion in one bill, under one general title, of subjects naturally and reasonably related to each other. St. Francis Levee Dist. of Missouri v. Dorroh, 316 Mo. 398, 414, 289 S.W. 925. * * * 'The law does not require each separate legislative thought to be embodied in a different bill, when they have a natural connection with each other.' Thomas v. Buchanan County, 330 Mo. 627, 636, 51 S.W.2d 95, 98. 'The evident object of the provision of the organic law relative to the title of an act was to have the title, like a guideboard, indicate the general contents of the bill, and contain but one general subject, which might be expressed in a few or a greater number of words. If those words only constitute one general subject; if they do not mislead as to what the bill contains; if they are not designed as a cover to vicious and incongruous legislation,—then the title can stand on its own merits, as an honest title, and does not impinge on constitutional prohibitions.' City of St. Louis v. Weitzel, 130 Mo. 600, 616, 31 S.W. 1045, 1049; Asel v. Jefferson, 287 Mo. 195, 204, 229 S.W. 1046, 1048. * * *

"The constitutional provision simply requires that the title shall give information of the general subject of the act. While it may be so general in its terms as to omit matters germane to the principal features of the statute, if it sufficiently indicates the substantial purpose of the law, it will not be violative of the Constitution. State v. Sloan, 258 Mo. 305, 313, 167 S.W. 500; State ex inf. Barrett v. Imhoff, 291 Mo. 603, 238 S.W. 122, 126."

Relators also cite Brown v. Sloan's Moving & Storage Co., Mo.Sup., 296 S.W.2d 20, 24; Hoerath v. Sloan's Moving & Storage Co., Mo.Sup., 305 S.W.2d 418; Graff v. Priest, 356 Mo. 401, 201 S.W.2d 945, 952, certiorari denied 332 U.S. 770, 68 S.Ct. 83, 92 L.Ed. 356, and say that these cases are in accord with the Edwards case insofar as it construes the constitutional provision in question. Relators also cite State ex rel. Reorganized School Dist. No. 4 of Jackson County v. Holmes, 360 Mo. 904, 231 S.W.2d 185, 187, 188 where the Court said: "We have uniformly ruled that where all the provisions of a statute fairly relate to the same subject, have a natural connection with it, are the incidents or means of accomplishing it, then the subject is single. * * * 'In adopting a title, the legislature may select its own language, and may use few or many words. It is sufficient that the title fairly embraces the subject-matter covered by the act; mere matters of detail need not be stated in the title.' State ex rel. Attorney General v. Miller, 100 Mo. 439, loc. cit. 445–446, 13 S.W. 677, 678. If the title is a fair index to all that is embraced in the statute, then it complies with the constitutional mandate that the title clearly express the subject of the bill."

Relators also refer to cases where the Court "drew the distinction between titles to legislative acts which set forth a number of details, in which cases the particulars not expressly stated are deemed improperly included in the text of the act, and titles which are general and, therefore, not controlled by the rule applicable to the more particularized titles." Relators then argue that Senate Bill No. 7 "has the broad and general purpose of providing for higher education and its title is stated in general

terms"; and that "the only limitation on the contents of the Act is that its provisions *must relate to the purpose of the legislative enactment.*" Relators then cite State v. Bennett, 102 Mo. 356, 14 S.W. 865, 10 L.R.A. 717; State ex rel. Lorantos v. Terte, 324 Mo. 402, 23 S.W.2d 120 and Edwards v. Business Men's Assurance Co., *supra,* as illustrative of general titles having broad coverage. Relators also point to the fact that this Court, in the case of State v. Ward, 328 Mo. 658, 40 S.W.2d 1074, 1076, said with reference to the constitutional provision in question that: "'* * * a very strict and literal interpretation would lead to many separate acts relating to the same general subject, and thus produce an evil quite as great as the mischief intended to be remedied; hence a liberal interpretation and application must be allowed. * * *'" And see: Graff v. Priest, *supra,* 201 S.W.2d 945, 952; State on inf. of Wallach, Pros. Atty. v. Beckman, 353 Mo. 1015, 185 S.W.2d 810, 815.

We think it clearly appears that the provisions of Section 165.833 are wholly foreign to the title and subject matter of the Act in which the section has been placed. The title is "An Act to provide for the *formation of junior college districts* and to establish the *powers* and *duties* of the state board of education with respect thereto." (Italics ours.) The section in question provides that whenever there is within any school district any school property that is not required for the use of the school district such school district may lease or sell and convey the same to any public institution of higher learning offering education beyond grade twelve. The section also provides how the proceeds derived from such sale shall be disposed of. There was nothing in the title of the Act to advise the public or any member of the Legislature that the Act contained authority for any school district to sell at private sale and convey to any institution of higher learning offering education beyond the twelfth grade any school property of the district not required for its use. Relators

say that all of the provisions of the Act relate to "higher education," however, "higher education" is not the title of the Act. The title is much more specific. The purported authority sought to be granted to any school district having any school property that is not required for the use of the school and the directions as to the disposition of the proceeds of the sale of such property are not germane to the *formation* of Junior College Districts or to the *establishment of the powers and duties* of the State Board of Education with respect to such Junior College Districts.

The issue presented can be illustrated in the following manner. The School District in question is not a Junior College District, neither are The Curators of the University of Missouri a Junior College District, but relators seek to use a provision of "An Act for the *formation* of junior college districts and *to establish the powers and duties of the state board of education with respect thereto,*" (italics ours) as authority for the proposed transfer of the mentioned property by the School District to the University. If the section relied upon does, in fact, on its face purport to authorize such a transfer, are its provisions within the purposes of the Act as indicated by its title? If the section authorizes such a conveyance does the title of the Act "give information of the general subject of the Act," including the provision in question? Did the title give any intimation to the public or the members of the Legislature that such a provision was included in the Act? In other words, is the authority now relied upon to support the proposed conveyance within the purview of the title of the Act and germane thereto? The answers to these questions must certainly be, no. Relators refer to the "wide purposes announced in the title," but we do not find it wide enough to include the authority now sought to be exercised under the mentioned provision of the Act. We must and do hold that the subject matter of Section 14 of the Act (Section 165.833 RSMo) is not "clearly expressed" in the title of the

mentioned Act and the said section is unconstitutional and void. However, even if valid, the section could hardly be said to authorize a sale of school property for ten percent of its value, since such would not be upon the usual terms of a private sale and the building fund would be deprived of nine-tenths of its value.

■ Relators further contend that: "The power of government and control vested in the Relator District by necessary implication includes the power *to permit the use of the land in question* for educational purposes by the State University, if the Board of Education of Relator District shall have found that *the educational interests of the Relator District will be best served thereby.*" (Italics ours.) However, no such issue is presented to us on this record which concerns a proposed sale and conveyance of property of the value of some $600,000 owned by the School District, but not required for the use of the School District, to The Curators of the University of Missouri "for use in its educational purposes" for $60,000. It is clear from the admitted facts that the proposed sale was not made after advertisement; that it was not made at public sale; that the sale was not to the highest bidder after advertisement; and that the parties are and have been proceeding on the basis of a private contract and private sale for a cash consideration not exceeding ten percent of the cost of the property to the School District in 1959. Relators further argue that: "The proposed transfer is lawful as merely a transfer of state property held by one trustee for the state for educational purposes to another trustee for the state for educational purposes"; and that, "property belonging to school districts is the property of the state and is held by the school district as a statutory trustee and the residents of the school district have no private property interest therein."

Relators rely upon the rule stated in 47 Am.Jur. 342, Schools, Sec. 65, as follows: "The ownership of school property is generally in the local district or school board as trustee for the public at large. Such property occupies the status of public property and is not to be regarded as the private property of the school district by which it is held or wherein it is located." Relators also cite State ex rel. Richart v. Stouffer, Mo.Sup., 197 S.W. 248; School District of Oakland v. School District of Joplin, 340 Mo. 779, 102 S.W.2d 909; City of Edina, etc. v. School District, 305 Mo. 452, 267 S.W. 112, 36 A.L.R. 1532.

While it is true that: "In Missouri the property of school districts acquired from public funds is the property of the state, not the private property of the school district in which it may be located, and the school district is a statutory trustee for the discharge of a governmental function entrusted to the state by our Constitution" (School District of Oakland v. School District of Joplin, supra, 102 S.W.2d 909, 915) and while "school districts are purely public corporations, and may be created and abolished at will by the Legislature or by any one by it lawfully authorized" (State ex rel. Richart v. Stouffer, supra, 197 S.W. 248, 252(4)) and while the Legislature may make statutory provision for the transfer of title to property from one such public corporation to another (see Section 165.300 RSMo 1959, V.A.M.S.), nevertheless the question here is whether or not there is any statutory authority for any such transfer of the property of the Normandy School District to The Curators of the University of Missouri as is here proposed. Absent *such authority* a school district may not sell, transfer or give away its property or devote it to a different use than that prescribed by the statutes under which such public corporation exists and its property is held.

Relators, however, insist that authority for the proposed transfer of title exists under Section 165.317 RSMo 1959, V.A.M.S., which provides that the *government* and *control* of such town and city school districts shall be vested in the Board of Education. Relators say that section vests

the School Board of Relator District with all the powers required to effectively and efficiently carry out its educational purposes, including the sale and transfer of the mentioned property for the mentioned consideration and under the mentioned circumstances to The Curators of the University of Missouri.

The Legislature did not stop with the general statute now relied upon, but included Section 165.370 dealing with the particular and specific matter of the disposition of property "that is no longer required for the use of the district." This section authorized the Board "to advertise, sell and convey the same" and to place the proceeds to the credit of the building fund of the district. The special statute controls over the general statute. "Under the established rules of statutory construction where there are two laws relating to the same subject they must be read together and the provisions of the one having a special application to a particular subject will be deemed to be a qualification of, or an exception to, the other act general in its terms." Eagleton v. Murphy, 348 Mo. 949, 156 S.W.2d 683, 685, 138 A.L.R. 749; Fleming v. Moore Bros. Realty Co., 363 Mo. 305, 251 S.W.2d 8, 15(6, 7).

Relators further argue that: "There is, however, no statute which, by express terms or implication, can be reasonably construed to withdraw from the general powers granted a school district *the right to permit the use of its property by another educational institution,* when it has been found that such use is to the best interest of advancing the educational advantages of the school district"; and that "unless there is sound and compelling reason to hold otherwise, the statute should be construed so as to aid, not impede, the carrying out of the general purpose of the Legislature. State [on Inf. of Taylor] v. Kiburz, 357 Mo. 309, 208 S.W.2d 285." (Italics ours.)

Again, we must say that the issue presented by this argument is not before the Court. The record before us presents a proposed private transfer of some $600,000 worth of the School District's property to The Curators of the University of Missouri for $60,000, it being agreed that the property is "for use in its educational purposes" and the deed provides that the property be so owned and held "so long as used for its educational purposes." It is apparent from the record presented that relator School District proposes to totally divest itself of any beneficial interest in or any ownership of or control over the described 128 acres of land and improvements.

Relators insist that this transfer of title "does not constitute a sale within the purview of Section 165.370 R.S.Mo., and the provisions of that statute relating to a sale of school district land are not applicable to this transfer"; that the statutory "procedure applies only to sales where property is being transferred away from educational uses and placed in the general channels of commerce * * * that it is not applicable to the transaction here under consideration"; that "where the transfer is from one state agency to another, both of which are charged with the duty to advance educational purposes, and where the property is to remain in educational channels, the reason for the requirement of public sale does not apply"; and that "the law favors a statutory construction harmonizing with reason and tending to avoid harsh, unreasonable or incongruous consequences and, especially, results detrimental to the public interest." State v. Bern, Mo.App., 322 S.W.2d 175, 177, and cases therein cites. Relators further argue that "upon consummation of the proposed transfer" the Normandy School District "will have control over the use that may be made of the property" because of the "limitation that the property be used only for educational purposes." We find no merit in this argument for the reason that whether we call the transaction a transfer or a sale the record shows an attempt to dispose of property not now required for the use of the School District, but by a method unsup-

ported and unauthorized by any statutory or constitutional authority.

Relators' final contention is that "the consideration for the proposed transfer * * * is fair and reasonable under the circumstances and constitutes 'adequate' consideration commensurate with the value of the interest to be transferred"; that "the record before the court shows the benefit to be received by the Normandy School District and the taxpayers residing therein is commensurate with the value of the interest in the property being transferred to the University of Missouri"; and "upon completion of the proposed arrangement, Relator School District will be relieved of the perpetual administrative, financial and other burdens attendant to the ownership and operation of the Junior College which it now is operating under contract and in conjunction with the University of Missouri."

It is clear from the record that the alleged benefits to the School District above $60,000 are entirely contingent upon the subsequent management, control and use of the property which in turn are contingent upon subsequent appropriation of funds by the Legislature for such use by the University. Relators recognize the contingency since they say that consummation of the proposed transfer will "put it in the power of the University to expand its higher educational program by the establishment of a branch University in a location already seeded for success should the Legislature in its wisdom and within its available resources approve this form of progress." The essential and decisive facts are that the District seeks to divest itself of title to the property in exchange for some ten percent of its value without any attempted compliance with the applicable statutory provisions. This it cannot do, absent express legislative authority.

Our peremptory writ is denied and the application therefor is dismissed.

EAGER, J., concurs in result in separate opinion filed.

HYDE, J., concurs in separate opinion filed.

HOLLINGSWORTH, J., concurs in result and concurs in the separate opinions of EAGER and HYDE, JJ.

STORCKMAN, J., dissents in separate opinion filed.

WESTHUES, C. J., dissents and concurs in the dissenting opinion of STORCKMAN, J.

LEEDY, J., dissents and concurs in the dissenting opinion of STORCKMAN, J., except that paragraph expressing doubt as to the effect flowing from declaring a portion of an act unconstitutional under Art. III, Sec. 23 of the Constitution.

HYDE, Judge (concurring).

I concur in the ruling of the opinion of DALTON, J., herein that Sec. 165.833, RSMo (1961 Cum.Supp.) V.A.M.S. is invalid and concur in the reasons therefor stated in the separate concurring opinion of EAGER, J. I would add the following comments. It certainly is true, as stated in School District of Oakland v. School District of Joplin, 340 Mo. 779, 102 S.W.2d 909, 915, cited by relators: "In Missouri the property of school districts acquired from public funds is the property of the state, not the private property of the school district in which it may be located, and the school district is a statutory trustee for the discharge of a governmental function entrusted to the state by our Constitution." Since school property is the public property of the State, the Legislature may authorize or require its transfer from one school district to another as it had done by statute in the Oakland case. (See also State on inf. of Dalton v. Metropolitan St. Louis Sewer District, 365 Mo. 1, 275 S.W.2d 225,

231.) Thus the Legislature could have authorized any school district to transfer property to a state institution of higher education without any lease or sale for the purpose of using it to operate a junior college. However, it has not done so by Sec. 14 of the 1961 act. (Sec. 165.833.)

Sec. 165.833 does not say that a school district may transfer school property to an institution of higher education which will assume the obligation of using it for operating a junior college; nor does it state any requirements for specifying or determining the use to be made of the property and fixing the obligation to do so. Instead it only authorizes a school district that has property not required for its use to *sell* or *lease* such property, as could be used for higher education, to such an institution. "Sell" or "lease" would seem to mean a transaction based on reasonable value especially since the proceeds are required to be placed in the building fund of the district, the same as required for a sale to others by Sec. 165.370, RSMo. The principal difference is that Sec. 165.833 does not require an advertised sale for such a transaction with an institution of higher education.

This seems to me to get far away from "the formation of junior college districts and to establish the powers and duties of the state board of education with respect thereto." Instead it has to do with the sale or lease of school district property to institutions of higher education with the use to be made of such property unrestricted. If the Legislature had by this bill specifically authorized transfers of property of school districts, with or without consideration, to state institutions of higher education for the purpose of operating junior colleges we would have a different question. Of course, it could authorize such a transfer for any purposes of higher education by a separate bill with a title clearly expressing such provision as its subject. This, in my view, would be a separate subject from formation of junior college districts.

I do not share the doubt expressed in the dissenting opinion of STORCKMAN, J., as to declaring this portion of the Act unconstitutional under Sec. 23, Art. III, and letting the remainder stand. The provisions clearly within the title are valid and only the part not covered by the title is invalid when it is severable. (State ex rel. Taylor v. Wade, 360 Mo. 895, 231 S.W.2d 179, 184, and cases cited; see also West's Missouri Digest, Statutes ☞64(10).) I do not see how there can be any doubt that the Act provides a complete and workable plan for formation of junior college districts without Section 14.

EAGER, Judge (concurring in result).

It is my view that if § 165.833 (Cum. Supp.1961) had so restricted the power "to lease or sell" property that it could only be leased or sold to a Junior College District, then the purpose and intent of the section would have been germane to the purpose of the act and fairly within its title. As the section now stands, such a conveyance may be made to any institution "offering education beyond grade twelve." Those provisions necessarily include a University offering a full four-year course and graduate work. The act purports to deal only with Junior College Districts which propose to offer "13th and 14th year courses." Section 165.800; Section 165.793. The Curators of the University are clearly *not* a Junior College District; the section, as it now stands, is broad enough to authorize a conveyance to them and, as thus construed, it is not germane to the title of the act or to its basic content. My conclusion is that the conveyance here is invalid, and that § 165.833 is, in its present form, unconstitutional. In my opinion the section could readily be amended so as to restrict the power to convey, as suggested, and thus be constitutional.

I do not concur in that part of the principal opinion holding the conveyance invalid because of inadequate consideration.

STORCKMAN, Judge (dissenting).

I regret that I am unable to concur in the holdings of the majority opinion or in its result.

The facts as stated in the pleadings are admitted and there is also a stipulation of further facts and these together with the exhibits attached to the pleadings are the source of the facts upon which the issues of law must be decided. The undisputed facts as so developed are set out in a printed Abstract of the Record.

The relators and the respondent have filed briefs. Leave was granted and a brief was filed on behalf of an amicus curiae. The brief is signed by a firm of attorneys but the name of the amicus curiae is not disclosed. The amicus curiae's brief endorses the respondent's position but does not purport to brief or argue the issues made by the parties. Instead the unnamed amicus curiae undertakes to brief and argue these additional questions: (1) that § 165.833 and the entire Junior College Districts Act are special legislation in violation of Art. III, § 40, subd. (16), of the Constitution of Missouri 1945, and (2) that Art. IX, § 8, Constitution of Missouri 1945, prohibiting public aid for religious purposes and institutions, and the Junior College Districts Act violates the First and Fourteenth Amendments to the Constitution of the United States and are, therefore, unconstitutional. The law is well settled that the court will not pass on grounds of invalidity urged by an amicus curiae but not presented by the parties since an amicus curiae cannot formulate issues but must take the case as he finds it. Laret Investment Co. v. Dickmann, 345 Mo. 449, 134 S.W.2d 65, 70 [11]; State ex rel. News Corp. v. Smith, 353 Mo. 845, 184 S.W.2d 598, 600[6]. Since the brief of the amicus curiae does not bear upon the issues before us, it must be disregarded.

The respondent's principal contention of invalidity is his Point II, which is as follows: "Section 165.833, R.S.Mo. (Laws 1961, S.B. No. 7, Section 14), is unconstitutional in that it is not germane to the general subject of the Junior College Districts Act (Section 165.790, et seq., Laws 1961) nor was the subject of Section 165.833 clearly expressed in the title to the Bill. If Section 165.833 is not unconstitutional, then its provisions can only apply to a leasing or selling of school board property to a Junior College District and a sale to The University of Missouri is void." In support of this point, the respondent cites Art. III, § 23, Constitution of Missouri 1945, and Edwards v. Business Men's Assurance Co. of America, 350 Mo. 666, 168 S.W.2d 82.

Section 23 of Art. III of the Constitution provides that: "No bill shall contain more than one subject which shall be clearly expressed in its title * * *." The constitutional section therefore provides for two things: (1) that no bill shall contain more than one subject, and (2) that the subject shall be clearly expressed in the title.

The majority opinion holds that the Junior College Districts Act violates the constitutional prohibition in both respects, stating on page 870: "We think it clearly appears that the provisions of Section 165.-833 are wholly foreign to the title and subject matter of the Act in which the section has been placed." With this viewpoint I cannot agree. I believe it to be out of harmony with adjudicated cases and well-established rules of interpretation. It has been said repeatedly that each case arising under Art. III, § 23, must be decided on its own particular facts. It would serve no purpose to review even a small portion of the many adjudicated cases on this issue, but a brief reference to accepted standards and rules of construction may be helpful.

Both parties rely upon Edwards v. Business Men's Assurance Co. of America, 350 Mo. 666, 168 S.W.2d 82. In that case the court held an insurance statute was constitutional and not in violation of Art. III, § 23. The majority opinion quotes liberally from the decision and there is no need to repeat any part of it here.

The writer has found six cases in which school legislation has been attacked as being unconstitutional on the ground that it violated Art. III, § 23. In each case the legislation was held not to be unconstitutional. In one of the earlier cases. State ex rel. Wolfe v. Bronson, 115 Mo. 271, 21 S.W. 1125, 1126, this court stated: "These and other cases show that this section of the constitution is to be reasonably and liberally construed and applied, due regard being had to its object and purpose. It was designed to prevent the insertion of disconnected matters in the same bill. The section asserts only two propositions. The first is that no bill shall contain more than one subject, and the second is that this single subject must be clearly expressed in the title. If all the provisions of the bill have a natural relation and connection, then the subject is single, and this, too, though the bill contains many provisions. As to the second proposition, namely, that the single subject must be clearly expressed in the title, it is sufficient to say that the legislature may select its own language, and may use few or many words. It is sufficient that the title fairly embraces the subject-matter covered by the act; mere matters of detail need not be stated in the title." The title of the act, Acts 1891, p. 26 involved was "An act to establish and maintain a uniform course of text-books to be used in all the public schools within this state, and to reduce the price thereof." In spite of the all-inclusive title, a proviso of the act excluded from its operation cities and districts having more than 100,000 inhabitants. It would seem that those included or excluded might have been misled, but the court held that the fact that the title was broader than the act itself did not make it unconstitutional.

The latest school law case seems to be State ex rel. Reorganized School Dist. No. 4 of Jackson County v. Holmes, 360 Mo. 904, 231 S.W.2d 185. The court held that an act providing for the creation of county boards of education, the preparation of a reorganization proposal and its submis-sion at an election and the granting of state aid to the reorganized school district did not violate the constitutional provisions against the bill having more than one subject because they were all related to reorganized school districts. The court stated, 231 S.W.2d loc. cit. 187–188: "We have uniformly ruled that where all the provisions of a statute fairly relate to the same subject, *have a natural connection with it, are the incidents or means of accomplishing it,* then the subject is single." Emphasis added. The court also denied a contention that the title was less comprehensive than the act, stating loc. cit. 188: "'In adopting a title, the legislature may select its own language, and may use few or many words. It is sufficient that the title fairly embraces the subject-matter covered by the act; mere matters of detail need not be stated in the title.' State ex rel. Attorney General v. Miller, 100 Mo. 439, loc. cit. 445–446, 13 S.W. 677, 678. If the title is a fair index to all that is embraced in the statute, then it complies with the constitutional mandate that the title clearly express the subject of the bill."

Other cases where attacks have been made on school legislation as being unconstitutional in violation of Art. III, § 23, are State ex rel. Attorney General v. Miller, 100 Mo. 439, 13 S.W. 677; State ex rel. School Dist. of Memphis v. Gordon, 223 Mo. 1, 122 S.W. 1008; State ex rel. Clark v. Gordon, 261 Mo. 631, 170 S.W. 892; and State ex rel. and to Use of Consolidated School Dist. No. 3 of Franklin County v. Miller, 326 Mo. 830, 33 S.W.2d 122. In all of these cases the constitutionality of the acts were upheld.

A number of cases stress the fact that the subject of an act is single when all provisions fairly relate to the same subject, have a natural connection therewith, and are incidents or the means of accomplishing it. See Thomas v. Buchanan County, 330 Mo. 627, 51 S.W.2d 95, 97[3].

The title of an act should be liberally construed to support the power sought to be

exercised by the general assembly, and where neither the public nor the general assembly would likely have been misled as to the general contents or subject matter it will be deemed a sufficient compliance with the constitutional mandate. See Willhite v. Rathburn, 332 Mo. 1208, 61 S.W.2d 708, 711[4, 5].

A similar principle was involved in State ex rel. Board of Fund Commissioners v. Holman, Mo., 296 S.W.2d 482, 491[6], where a number of items in a bond issue were held to be "germane to a single controlling purpose." See also State v. Bennett, 102 Mo. 356, 14 S.W. 865, 10 L.R.A. 717; State ex rel. Lorantos v. Terte, 324 Mo. 402, 23 S.W.2d 120; and State v. Ludwig, Mo., 322 S.W.2d 841.

The approach of the courts to the determination of this question is well stated in a case determining the validity of the County Budget Law, Graves v. Purcell, 337 Mo. 574, 85 S.W.2d 543, 549, as follows: "There is a presumption that the statute here assailed is constitutional. The burden rests upon the party questioning the constitutional validity of a statute to establish its unconstitutionality beyond a reasonable doubt, and if its constitutionality remains in doubt, such doubt must be resolved in favor of its validity. [citing cases.] This court has long been committed to the principle that section 28 of article 4 of our Constitution must be liberally construed. [citing cases.] A liberal construction of the constitutional provision in question requires that such construction be fair, reasonable, and rational, to the end that legislative action shall not be thwarted and nullified by the courts by a resort to undue subtleties and refinements or extreme and artificial formalism."

Viewed in the light of these well-established principles, I am unable to find anything in the Abstract of the Record or the respondent's brief that convinces me that the respondent has carried his burden of demonstrating that the Act in question is unconstitutional either because of a multiple subject, or because of a defect in the title of the Act. The Act relates entirely to education and to education beyond grade twelve. Although the title stresses "formation" of the junior colleges, sections of the Act deal with operations such as financing and curriculum. Disposition and acquisition of physical property is a necessary part of the operation and it is required that the accreditation standards shall give due consideration "to curriculum offerings and entrance requirements of the University of Missouri." Section 165.833 is directly related to junior college districts. It would certainly justify a transfer by the school district of the real estate in question to a junior college organized under the Act because a junior college is a public educational institution offering education beyond grade twelve. The respondent recognizes this fact in the second or alternative part of his Point II. The University offers instruction in grades thirteen and fourteen and I cannot see any valid reason for holding the proposed transfer void because the University may in the future (as indicated by the record) also offer a complete college course which would have to include grades thirteen and fourteen. Since § 165.833 is related to education beyond grade twelve, I think it is strictly for the general assembly to determine the legislative question of whether public educational institutions offering education beyond grade twelve should be permitted to contract with and acquire property to be used for such an educational purpose. See Art. VI, § 16, Constitution of Missouri 1945; §§ 70.210(2) and 70.220, RSMo 1959, V.A.M.S.; Art. IX, §§ 9(a) and 9(b), Constitution; § 172.020, RSMo 1959, V.A.M.S.

I cannot subscribe to the view that the purposes of the constitutional safeguards as listed in Edwards v. Business Men's Assurance Co. and other cases have been violated. A clear example of the sort of thing prohibited by the state constitution is the combination of such unrelated mat-

878

ters as a proposal to establish a national monument and a proposal to abolish the state poll tax which misalliance is apparently in a bill now before the National Congress where such practice is not prohibited. Certainly the junior college bill was not "hodgepodge or log rolling legislation" which is the practice of combining unrelated matters for parlimentary strategy, concealment or vote-getting purposes. Nor does it violate the second or third purposes which are to give reasonable information and notice to legislators and to the public of the contents of bills.

Perhaps the respondent's strongest condemnation of § 14 of the Act (§ 165.833) is his statement that: "Respondent doubts that some members of the Legislature and the public were aware of the fact that this exception to the general rule governing sale of surplus school district property, was adopted." This probably could be said of many other perfectly valid statutes in force today, but it is not the constitutional standard. Anyone with an active interest in education generally, education beyond grade twelve, junior colleges or colleges generally, would undoubtedly be stimulated to read the bill and would not be deceived or misled as to its contents. It has been said that such constitutional provisions "presuppose a reasonably inquiring state of mind which will follow the trail indicated by the main part of the title into the body of the act." 82 C.J.S. Statutes § 212, p. 350.

The extent to which a person is expected to inquire and investigate is indicated by Young v. Greene County, 342 Mo. 1105, 119 S.W.2d 369, 372–373[3], which considered the constitutionality under Art. III, § 23, of a statute fixing the salaries of county judges. The new law substituted salary in lieu of certain other fees, allowances and compensation. The bill referred to the statute to be amended and the new statute by section number, but mistakenly said the section was in Article 6 instead of Article 5. The court held that a per-

son of average intelligence by "looking through the statutes" would be able to find the section and denied the claim of unconstitutionality as being hypertechnical.

On principle, In re Tarkio-Squaw Levee District of Holt County, Mo., 319 S.W.2d 660, is very similar to the instant case. There the bill, Laws 1947, p. 226, referred to the old and new sections by number and the title stated in substance that the sections related "to the organization and functioning of levee districts by Circuit Courts". Nevertheless, the new section 12510 RSMo 1939, added a proviso, not in the old one, authorizing the board of supervisors to cooperate with federal agencies, accept grants in aid and to "give such assurances as may be required to obtain the construction of the works and improvements". The court held that the reference to the statute to be amended by section number was sufficient and that the new proviso which made the federal agency the dominant actor in the reclamation project did not render the act unconstitutional, stating, 319 S.W.2d at page 665: "The amendment was germane to the subject matter contained in the title to the original act authorizing the organization of levee districts which was 'An Act providing for the organization of levee districts by the owners in any contiguous body of land situate in one or more counties in this state and bordering on, situate near or subject to overflow by the rivers of this state, to prevent and to protect such lands from such overflows.' Laws 1887, p. 208."

To hold that § 165.833 is "wholly foreign to the title and subject matter of the Act" is to adopt an unwarranted strictness of construction which thwarts the will of the legislature and unnecessarily hinders and impedes our public educational institutions in bringing higher education to various sections of the state, a program that has been far advanced in other states. I would hold the entire Junior College Districts Act, including § 165.833, to be constitutional.

Holding § 165.833 entirely void, of course, precludes school districts and junior college districts from contracting directly with each other with respect to real estate which a school district does not need and which it wishes to transfer to a junior college district of which it is a constituent part.

I seriously doubt if the court can declare a portion of an act unconstitutional and let the remainder stand where the attack is based on Art. III, § 23. This is especially true where the act is held to contain more than one subject. Art. III, § 23, prohibits *the entire* act if it contains more than one subject and the court can hardly be justified in choosing from the act the subject which, if submitted alone, the legislature would have enacted. To a lesser degree, perhaps, the same is true of a defective title. The title might in certain cases give a better clue as to the legislative intent but still the constitutional provision says "No bill" shall have a title that does not clearly express its contents. The severability statute, § 1.140, would not prevail over the constitutional mandate. This is wholly unlike a situation where the constitutional prohibition is not directed to the entire act and is found to inhere only in an unneeded portion. It may be that the authority to acquire real estate at less than its value in the open market for business or residential purposes was a potent factor in the passage of the bill.

Since the majority opinion holds there is no valid basis for the proposed conveyance, I can see no need for its discussing adequacy of consideration, but since it has done so, I will advert to that topic briefly. If § 165.833 is constitutional, then I think it is entirely within the competence of the board of education of the school district and the board of curators of the University to make a contract that benefits the cause of education. That is their statutory duty

and there is no reason to suspect that either is seeking a financial advantage to the detriment of the other. A reading of the record demonstrates that the proposed junior college is mutually advantageous and that the consideration flowing to the school district is not entirely expressed in dollars presently passing. This sort of endeavor is of equal or greater importance than an industrial development project which the general assembly has authorized communities to sponsor. Sections 71.-790–71.850, RSMo Cum.Supp.1961, V.A.M. S.; State ex rel. City of Charleston v. Holman, Mo., 355 S.W.2d 946. Absent a charge of fraud or positive wrongdoing, the court should summarily dismiss a contention like this one.

Further on this score I do not think that the majority opinion is justified in its apparent concern that the University is not sufficiently bound to perform its part of the bargain in view of its constitutional and statutory duties, the reservations in the proposed deed and the facts stipulated.

The respondent further contends that school property not needed by the school district can only be sold by advertising and at a public sale in accordance with the provisions of § 165.370. Section 165.-370 is general in nature which applies when the school district is making an absolute conveyance to private persons for business or residential purposes. Section 165.833 is a specific section designed to cover situations when the conveyance is made to another public institution for the purpose of offering education beyond grade twelve. This new section being a specific section and the more recent enactment would control over the general provision.

In my opinion the respondent's objections to signing the deed are without merit. I would order the peremptory writ of mandamus to issue.